# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 10-3433

MANUEL DE JESUS FAMILIA ROSARIO,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A046-778-586

ARGUED JUNE 10, 2011—DECIDED AUGUST 24, 2011

Before BAUER, FLAUM, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Manuel de Jesus Familia Rosario has been a Lawful Permanent Resident of the United States since 1999. In November 2007, pursuant to a single-count information, Familia Rosario pled guilty to aiding and abetting a conspiracy, the object of which was a violation of 8 U.S.C. § 1328, which prohibits the "importation into the United States of any alien for the purpose of prostitution, or for any other immoral purpose."

Familia Rosario's role consisted of distributing condoms to what he knew were brothels. At sentencing, the government conceded that Rosario was "a minor participant" and agreed to a two-level reduction in the calculation of his base offense level. In November of 2009, judgment was entered and Familia Rosario was sentenced to time served.

The government commenced removal proceedings in early 2010 on the grounds that Familia Rosario committed a crime involving moral turpitude under section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act ("INA"), and for having indirectly or directly procured prostitutes or persons for the purpose of prostitution, pursuant to INA § 212(a)(2)(D)(ii). Familia Rosario conceded removability for a crime involving moral turpitude, but denied removability for procuring persons for the purpose of prostitution. He claimed that he was eligible for cancellation of removal under INA § 240A(a), which requires that the noncitizen have lawful permanent residence for five years, continuous residence for seven years, and no conviction for what amounts to an aggravated felony. Though not charged with removability based on a conviction of an aggravated felony, the government argued, and the Immigration Judge agreed, that Familia Rosario committed "an offense that relates to the owning, controlling, managing or supervising of a prostitution business," and was therefore an aggravated felon under INA § 101(a)(43)(K)(i). The Immigration Judge denied Familia Rosario's application for cancellation.

The Board of Immigration Appeals reviewed the Immigration Judge's decision de novo, and affirmed the de-

termination that Familia Rosario's conviction constituted an aggravated felony. Rosario filed a timely petition of review, followed by an emergency stay of removal during the pendency of this appeal, which this court granted. Because we have concluded that the "importation into the United States of any alien for the purpose of prostitution," 8 U.S.C. § 1328, encompasses conduct that is broader than "an offense that relates to the owning, controlling, managing or supervising of a prostitution business," INA § 101(a)(43)(K)(i), we find that Familia Rosario's conviction is not properly categorized as an aggravated felony. The petition for review is granted, the order of removal is vacated, and the case remanded for consideration of Familia Rosario's application for cancellation of removal.

## I. BACKGROUND

Manuel de Jesus Familia Rosario is a sixty year old native and citizen of the Dominican Republic. He has lived in the United States as a Lawful Permanent Resident since 1999. Familia Rosario is married to a United States citizen, with two citizen children, and a child with Lawful Permanent Resident status.

In November of 2007, pursuant to a single-count information, Familia Rosario pled guilty in the United States District Court for the District of Minnesota to aiding and abetting a conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371 (conspiracy to commit offense or to defraud United States) and 18 U.S.C. § 2 (aiding and abetting statute). The object of the conspiracy was a violation of 8 U.S.C. § 1328, which

prohibits the "importation into the United States of any alien for the purpose of prostitution, or for any other immoral purpose." The factual basis of the plea agreement stated the following:

>    a. From in or about 2006 to on or about May 19, 2007, two or more persons came to an agreement or understanding to commit an offense against the United States, namely to run a prostitution operation in the State of Minnesota using women from other countries and states.
>
>    b. With knowledge of the existence and purpose of the conspiracy, the defendant voluntarily and intentionally aided and abetted the conspiracy.
>
>    c. In furtherance of the conspiracy, the defendant distributed condoms or "chocolates" to various brothels for the purposes of prostitution.

The plea agreement also stated that the "government agrees that the defendant's offense level should be decreased by 2 levels because the defendant was a minor participant in the conspiracy." Judgment was entered in November of 2009, and Familia Rosario was sentenced to time served.

The Department of Homeland Security commenced removal proceedings against Familia Rosario in early 2010 and detained Familia Rosario in March 2010, where he remains. His Notice to Appear charged that Familia Rosario was removable from the United States for having committed a crime involving moral turpitude pursuant to section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act ("INA"), and for having indirectly

or directly procured prostitutes or persons for the purpose of prostitution, pursuant to INA § 212(a)(2)(D)(ii). During a hearing before the Immigration Judge ("IJ") in May of 2010, Familia Rosario conceded that he was removable for having committed a crime of moral turpitude, but denied certain factual allegations and removability relating to the procurement of prostitutes. Familia Rosario also argued that he was eligible for cancellation of removal under INA § 240A(a).

Because Familia Rosario conceded removability under INA § 212(a)(2)(A)(i)(I) for a crime involving moral turpitude, the IJ determined that removability was established and did not reach removability under INA § 212(a)(2)(D)(ii), relating to the procurement of prostitutes. The IJ then addressed Familia Rosario's application for cancellation of removal. Under INA § 240A(a), a noncitizen must show that he has had lawful permanent status for at least five years, has resided in the United States for a continuous period of seven years after admission, and that he has not been convicted of an aggravated felony.

The government argued that Familia Rosario's conviction fell under INA § 101(a)(43)(K)(i), which includes as an aggravated felony "an offense that relates to the owning, controlling, managing or supervising of a prostitution business . . . ."[1] The IJ found that Familia Rosario's predicate conviction was "divisible," in that it included

---

[1] This provision is also found at 8 U.S.C. § 1101(a)(43)(K)(i). Unless otherwise noted, we shall only cite to the corresponding provision of the Immigration and Nationality Act.

conduct that would fall under INA § 101(a)(43)(K)(i) and conduct that would not. Using the modified categorical approach, the IJ found that the record of conviction showed that Familia Rosario was convicted of knowingly aiding and abetting in a conspiracy to import aliens for the purpose of prostitution, and that his conviction thus "relate[d] to" the owning, controlling, managing or supervising of a prostitution business. The IJ found Familia Rosario statutorily ineligible for cancellation of removal, and ordered him removed. Familia Rosario timely appealed to the Board of Immigration Appeals ("BIA"), which conducted a de novo review and affirmed the IJ's determination that Familia Rosario had been convicted of an aggravated felony. Rosario filed a timely petition of review, followed by an emergency stay of removal during the pendency of this appeal, which this court granted.

## II. ANALYSIS

The question raised in this appeal is whether Familia Rosario's conviction constitutes an aggravated felony under INA § 101(a)(43)(K)(i) such that he is ineligible for cancellation of removal. This court reviews de novo the legal question of whether a conviction constitutes an aggravated felony for purposes of eligibility for cancellation. *See Guerrero-Perez v. INS*, 242 F.3d 727, 730 (7th Cir. 2001). Where the BIA's decision adopts and affirms the IJ's conclusion as well as providing its own analysis, we review both decisions. *Gaiskov v. Holder*,

567 F.3d 832, 835 (7th Cir. 2009) (citing *Giday v. Gonzales*, 434 F.3d 543, 547 (7th Cir. 2006)).

We generally employ a categorical approach to determine whether a conviction constitutes an aggravated felony. *Gaiskov*, 567 F.3d at 835-36.[2] In applying the categorical approach in the aggravated felony context, the court makes a categorical comparison between the generic crime used in the INA and the elements of each particular offense of which the noncitizen was convicted. *See Gaiskov*, 567 F.3d at 835-36; *Eke v. Mukasey*, 512 F.3d 372, 379-80 (7th Cir. 2008).

However, when the underlying criminal statute proscribes multiple types of conduct, some of which would constitute an aggravated felony and some of which would not, courts have employed a "modified categorical approach." *See Gaiskov*, 567 F.3d at 836 n.2. Under this approach, a judge may examine the record of conviction, including the terms of a plea agreement, in order to determine whether the defendant pled guilty to the

---

[2] This approach has its origins in *Taylor v. United States*, 495 U.S. 575 (1990), in which the Supreme Court considered the circumstances under which a court could apply a statutory enhancement to the sentence of a defendant with a prior conviction for burglary. *See* 495 U.S. at 578 (considering application of 18 U.S.C. § 924(e), which provides for a sentence enhancement for a defendant with three previous convictions for a "violent felony," defined in part as "any crime . . . [that] is burglary"); *see also United States v. Woods*, 576 F.3d 400 (7th Cir. 2009).

portion of the statute that constitutes an aggravated felony. *Woods*, 576 F.3d at 406; *see also Gonzazels v. Duenas-Alvarez*, 549 U.S. 183, 187 (2007); *Shepard v. United States*, 544 U.S. 13, 16-17 (2005).

Before deciding whether to employ the categorical or modified categorical approach, we must first resolve the issue of what the proper statute of conviction is. Familia Rosario pled guilty to aiding and abetting two or more who conspired to commit an offense against the United States in violation of 18 U.S.C. sections 2 and 371.[3] Those statutes, by themselves, would not fall under the aggravated felony provision at issue here, as they have nothing to do with prostitution. The IJ and BIA instead used as

---

[3]  18 U.S.C. § 2 states:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 371 states, in relevant part:

> Conspiracy to commit offense or to defraud United States.

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

the predicate conviction 8 U.S.C. § 1328, which the infor-
mation states, and Familia Rosario concedes, was the
object of the conspiracy that Familia Rosario aided and
abetted. 8 U.S.C. § 1328 states in relevant part:

> The importation into the United States of any alien
> for the purpose of prostitution, or for any other
> immoral purpose, is forbidden. Whoever shall,
> directly or indirectly, import, or attempt to
> import into the United States any alien for the
> purpose of prostitution or for any other immoral
> purpose, or shall hold or attempt to hold any alien
> for any such purpose in pursuance of such illegal
> importation, or shall keep, maintain, control,
> support, employ, or harbor in any house or other
> place, for the purpose of prostitution or for any
> other immoral purpose, any alien, in pursuance
> of such illegal importation, shall be fined under
> Title 18, or imprisoned not more than 10 years,
> or both.[4]

Familia Rosario argues that the BIA improperly focused
on the object of the conspiracy rather than his conviction
for aiding and abetting the conspiracy. Using the object
of the conspiracy, Familia Rosario argues, would improp-
erly equate him with a co-conspirator as opposed to
simply an aider and abettor.

---

[4] The government does not contend, and the IJ and BIA did not
address, whether Familia Rosario's conviction fell under the
"control" language of 8 U.S.C. § 1328.

This court has, in the criminal context, acknowledged a distinction between conspiracy and aiding and abetting a conspiracy. In *United States v. Zafiro*, 945 F.2d 881, 884 (7th Cir. 1991), we noted that "[a]t first glance it might seem odd that there could be . . . separate crimes of conspiracy and of aiding and abetting a conspiracy," but then found that the act of aiding and abetting did "not necessarily" make the aider and abettor a member of the conspiracy, for example, when the aider and abettor did not form an agreement with the conspirators, an essential element for conspiracy liability. We later stated that, "[a]iding and abetting is not a separate crime," but maintained that there is a distinction between aiding and abetting a conspiracy and participating in a conspiracy, as "the statute enables the government to prosecute those who have knowingly furthered the aims of the conspiracy but who were not members of the conspiracy." *United States v. Loscalzo*, 18 F.3d 374, 383 (7th Cir. 1994). But as the aiding and abetting statute itself states, and as we have found, an "aider and abettor of a substantive offense may be treated as a principal." *Id*.

Though not in the conspiracy context, the Supreme Court has found that the generic term "theft offense" as used in the aggravated felony provision of the INA includes aiding and abetting theft. *Duenas-Alvarez*, 549 U.S. at 187, *see also* INA § 101(a)(43)(G); 8 U.S.C. § 1101(a)(43)(G) (including as an aggravated felony "a theft offense (including receipt of stolen property) . . . for which the term of imprisonment [is] at least one year"). In *Duenas-Alvarez*, the noncitizen was convicted of a California

state statute that punished the taking of a vehicle, and included liability for "any person who is a party or an accessory to or an accomplice in" the statute. *Id*. at 187. The Ninth Circuit had found that because one might "aid" or "abet" a theft without taking or controlling property, an element of generic theft, "aiding and abetting" theft was not itself a crime that fell within the generic definition of theft. The Supreme Court reversed. It found that no jurisdiction made a distinction between principals and aiders and abettors either present at the crime or those who help the principal before the criminal event takes place, and, because "criminal law now uniformly treats those . . . categories alike," generic theft covers "aiders and abettors" as well as principals. *Id*. at 820 (internal quotations omitted). The Court concluded, therefore, that the criminal activities of aiders and abettors of a generic theft must themselves fall within the scope of the term "theft" in the federal aggravated felony provision. *Id*.

Some tension exists between *Duenas-Alvarez* and our earlier cases in the criminal context that find that one can aid and abet a conspiracy without forming the agreement required for that conspiracy. To the extent a conflict exists in the aggravated felony context, it is not one we must resolve today. Even assuming the proper statute of conviction at issue is the *object* of the conspiracy that was aided and abetted, 8 U.S.C. § 1328, we do not find that the portion of the statute which related to Familia

Rosario's plea amounts to an aggravated felony.[5]

---

[5] Familia Rosario argues that if the proper inquiry is into the object of the conspiracy under an aiding and abetting theory, the proper aggravated felony provision at issue would be INA § 101(a)(43)(U); 8 U.S.C. 1101(a)(43)(U) ("an attempt or conspiracy to commit an offense described in this paragraph"), and that the failure to apply the proper provision amounts to reversible error. Here, the BIA specifically rejected using INA § 101(a)(43)(U), finding that the "substantive offense" of aiding and abetting under 18 U.S.C. § 2 formed the basis of the alleged aggravated felony, not the offense of conspiracy. The BIA then proceeded to directly apply INA § 101(a)(43)(K)(i), the provision regarding an offense that relates to the owning, controlling, managing, or supervising of a prostitution business. Again, this is not an issue we must resolve, as even if subsection U were applicable, the government would still need to prove that the object of the conspiracy "fit[s] within the particular [substantive] aggravated felony category," *Pierre v. Holder*, 588 F.3d 767, 774 (2d Cir. 2009) (citations and internal quotation omitted), here, subsection (K)(i), which we find it cannot do. We take no position on whether the agency's failure to properly apply INA § 101(a)(43)(U) in the cancellation of removal context is by itself reversible error. Nor do we take a position on whether the government's failure to properly charge a noncitizen with removal under INA § 101(a)(43)(U) in a Notice to Appear, and the Board's subsequent failure to analyze removability on that ground would amount to reversible error or a violation of due process. *See, e.g.*, *Pierre*, 588 F.3d at 775-76 (finding that INA § 101(a)(43)(U) is not a lesser included offense of INA § 101(a)(43)(M) such that failure to charge noncitizen with removability under subsection U was

(continued...)

The government argues that 8 U.S.C. § 1328 is a divisible statute, in that some conduct proscribed by the statute amounts to an aggravated felony, while other conduct does not. The government puts the "importation into the United States of any alien for the purpose of prostitution" in the aggravated felony side of the dividing line and the subsequent phrase, "or for any other immoral purpose," on the non-aggravated felony side. The IJ and BIA agreed, and, having found the statute divisible, looked to the record of conviction. The IJ and BIA then found that the plea agreement showed that the object of the conspiracy at issue was to run a prostitution business.

The IJ relied on unpublished BIA opinions that read section 101(a)(43)(K)(i) broadly. In one of those cases, the BIA found that a conviction for money laundering with intent to promote prostitution in violation of 18 U.S.C. § 1956(a)(1)(A)(i) related to the owning, controlling, managing or supervising of a prostitution business because it was "evident that one who conducts a financial transaction that 'involves the proceeds' of prostitution and that is undertaken with the intention of promoting prostitution has committed an offense that 'relates to' the managing of a prostitution business." *In re: Kiet Quan Ly*, 2004 WL 3187286 (BIA 2004) (unpublished). The IJ found that because Familia Rosario's assistance was given to advance the purpose of the conspiracy at issue

<hr />

[5] (...continued)

grounds for reversal, and that *sua sponte* invocation of subsection U violated noncitizen's due process rights).

in this case, namely, to run a prostitution business, his offense "relates to" the owning, controlling, managing or supervising of a prostitution business. The BIA agreed.

We find that the IJ and BIA's application of the modified categorical approach was erroneous, and that the agency improperly used the approach in this case to examine specific facts about the conspiracy involved in Familia Rosario's conviction. Under the modified categorical approach, "a judge may examine a limited set of additional materials . . . to determine the *portion* of [the underlying statute] to which the defendant pleaded guilty." *United States v. Taylor*, 644 F.3d 573, 576 (7th Cir. 2011) (emphasis added); *United States v. Woods*, 576 F.3d 400, 406 (7th Cir. 2009) (" . . . permissible additional materials may be consulted *only* for the purpose of deter- mining under which part of a divisible statute the de- fendant was charged.") (emphasis added). The inquiry should have ended when the IJ and BIA learned that "prostitution" was involved, and not some "other immoral purpose." The modified categorical approach does not permit examination of the charging instrument and plea agreement for the purpose of learning the specific facts of a specific conspiracy, such as the fact that this specific conspiracy involved a prostitution *busi- ness*, or what the defendant's specific role was in aiding and abetting that conspiracy.

The modified categorical approach only applies when a portion of the purportedly divisible statute itself cate- gorically amounts to an aggravated felony. Here, the IJ and BIA operated under that assumption without com-

paring the statutory elements of the first portion of 8 U.S.C. § 1328 to the offense described in INA § 101(a)(43)(K)(i). When conducting that analysis, we do not find that the portion of 8 U.S.C. § 1328 which formed the basis of Familio Rosario's aiding and abetting plea is "an offense that relates to the owning, controlling, managing or supervising of a prostitution business" under INA § 101(a)(43)(K)(i). The BIA has never addressed this specific question, and has only addressed INA § 101(a)(43)(K)(i); 8 U.S.C. § 1101(a)(43)(K)(i) in non-precedential, unpublished opinions.[6] We are therefore not bound to provide *Chevron* deference to any of the BIA's interpretations of INA § 101(a)(43)(K)(i). *See Arobelidze v. Holder*, ___ F.3d ___, 2011 WL 3132459 at \*6 (7th Cir. July 27, 2011 (" . . . non-precedential Board decisions that do not rely on binding Board precedent are not afforded *Chevron* deference."). Though *Skidmore* deference still applies to less formal statements by an agency, *see United States v. Mead Corp.*, 533 U.S. 218, 234-35 (2001) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)), and non-precedential opinions by the Board fall within that group, *Arobelidze*, 2011 WL 3132459, at \*6 (citation omitted), under *Skidmore*, the Board's interpretation is "entitled to respect . . . only to the extent that [it has the] power to persuade." *Id*. (citing *Bailey v. Pregis Innova-*

---

[6] *See, e.g., In re Giuseppe Parlato*, 2009 WL 2981757 (BIA 2009) (unpublished); *In re Juan Jesus Luna-Perez*, 2008 WL 496940 (BIA 2008) (unpublished); In *re Miguela de Leon*, 2007 WL 2197543 (BIA 2007) (unpublished); *In re Kiet Quan Ly*, 2004 WL 3187286 (BIA 2004) (unpublished).

*tive Packaging, Inc.*, 600 F.3d 748, 751 (7th Cir. 2010) (quotations omitted)). We do not find the BIA's interpretation of INA § 101(a)(43)(K)(i) persuasive.

Admittedly, the term "relates to" has been construed broadly. The Supreme Court, in interpreting the phrase "relating to" in the Airline Deregulation Act, observed that Black's Law Dictionary defines the words expansively: "'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting *Black's Law Dictionary* 1158 (5th ed. 1979)). The Second Circuit, in interpreting the aggravated felony provision found in INA § 101(a)(43)(R); 8 U.S.C. § 1101(a)(43)(R) ("an offense relating to . . . forgery") found that "even if possession of a forged instrument with intent to defraud, deceive or injure is not 'forgery' as defined at common law, it is unarguably an offense 'relating to' forgery within the broad construction we have given that term." *Richards v. Ashcroft*, 400 F.3d 125, 129-130 (2d Cir. 2005).

This court has similarly found that the term "'relating to' is intended to have a broadening effect." *Desai v. Mukasey*, 520 F.3d 762, 764 (7th Cir. 2008). In *Escobar Barraza v. Mukasey*, 519 F.3d 388, 391 (7th Cir. 2008), we held that possessing "a pipe for smoking marijuana is a crime within the scope of § 1182(a)(2)(A)(i)(II) (rendering a noncitizen inadmissible for violating "any law or regulation . . . relating to a controlled substance") because drug paraphernalia *relates to* the drug with which it is used." (Emphasis in original). We have also held that a convic-

tion for distributing a substance that was designed to look like a controlled substance and would "lead a reasonable person to believe it to be a controlled substance," is a violation of a law "relating to" a controlled substance. *Desai*, 520 F.3d at 764-65 (7th Cir. 2008). We held so because "the idea of distributing a "'. . . Look-Alike' would not even exist as a legal (or linguistic) concept without its connection to, or relationship with," the actual controlled substance. *Id*. at 765.

But this is not a case where the INA includes as an aggravated felony an offense that "relates to prostitution" or even an offense that "relates to a prostitution business." The INA requires that the offense relate to "the *owning, controlling, managing or supervising* of a prostitution business." INA § 101(a)(43)(K)(i); 8 U.S.C. § 1101(a)(43)(K)(i) (emphasis added). Those terms are not defined in the INA, and so we give them their plain, ordinary meaning. *Smith v. United States*, 508 U.S. 223, 228 (1993) ("'When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning.'") (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). In ordinary usage, to "own" something is "to have or hold as property or appurtenance." *Webster's Third New International Dictionary* 1612 (1993). To "control" a thing is "to exercise restraint or direction over; dominate, regulate, or command." *Webster's College Dictionary* 297 (1991); *see also Webster's New Collegiate Dictionary* 285 (9th ed. 1983) (defining "control" as the "power or authority to guide or manage"). To "manage" is "to control and direct," *Webster's Third New International Dictionary* 1372 (1993), and to "supervise" is to "oversee

with the powers of direction and decision," *id*. at 2296; *see also Webster's New World Dictionary*, 1430 (2d ed. 1974) ("supervise [means] to oversee, direct, or manage. . .").

The inclusion of these terms as plainly understood requires that the underlying offense not simply "stand in some relation" to or "have bearing or concern" with prostitution or a prostitution business, but that the actual statute of conviction "stand in some relation" to or "have bearing or concern" with some degree of decision-making authority or position of power in a prostitution business.

There are statutes that do just that. Some state criminal statutes explicitly include ownership, control, supervision, or management of a prostitution business as elements of the offense. In New York, for example, a person would be liable for promoting prostitution in the third degree, when she knowingly "[a]dvances or profits from prostitution by *managing, supervising, controlling or owning*, either alone or in association with others, a . . . prostitution business or enterprise involving prostitution activity by two or more prostitutes." New York Penal Law § 230.25(1) (emphasis added); *see also Youshah v. Staudinger*; 604 N.Y.S.2d 479, 480 (N.Y. Sup. Ct. 1993). Connecticut criminalizes the same conduct as promoting prostitution in the second degree, Conn. Gen. Stat. § 53a-87(a)(1) (same), as does Delaware, 11 Del. Code Ann. § 1352 (same), Alabama, Ala. Code 1975 § 13A-12-112(a)(1) (same), Arkansas, A.C.A. § 5-70-105(a) (same), and several other states from Maine, 17 Maine Rev. Stat. § 851(2)(E), to Hawaii, Haw. Rev. Stat. § 712-1203.

There are also a number of state statutes that do not explicitly use the terms "own, control, supervise, or manage," but would "relate to" such terms as we ordinarily understand them. For example, Alabama and Connecticut include in their definition of "advance prostitution" a person who "operates or assists in the operation of a house of prostitution or a prostitution enterprise," and such a person could be liable for promoting prostitution in the third degree. Ala. Code 1975 §§ 13A-12-110; 13A-12-113; Conn. Gen. Stat. §§ 53a-85; 53a-88. In Arizona, a person "who knowingly operates or maintains a house of prostitution or prostitution enterprise is guilty of a class 5 felony." Ariz. Rev. Stat. § 13-3208(B).

We cannot find that the "importation into the United States of any alien for the purpose of prostitution," under 8 U.S.C. § 1328, unlike the state statutes discussed above, categorically "relates to" the ownership, control, supervision, or management of a prostitution business. The statute, by its very terms, includes conduct that might have nothing to do with ownership, control, management or supervision of a business. Generally, a conviction under 8 U.S.C. § 1328 would only require proof that (1) the defendant imported a person into the United States; (2) that person was an alien; and (3) the defendant imported the alien for the purpose of having him or her engage in prostitution. *See, e.g., United States v. Mi Kyung Byun*, 539 F.3d 982, 986-87 (9th Cir. 2008). Involvement in a prostitution business is not an element of the offense, nor is any "relation to" a position of authority or power in such a business. Clearly, the statute certainly *can* cover conduct that includes the ownership

and control of a prostitution business, s*ee, e.g., id*. at 983 (conviction under 8 U.S.C. § 1328 where "Mi Kyung Byun and her husband *owned and operated* a night club . . . in which female employees could engage in sexual acts with the club's clients") (emphasis added), but that possibility (and actual occurrence) is not sufficient for finding that 8 U.S.C. § 1328 is categorically an offense that relates to the owning, controlling, managing or supervising of a prostitution business.

In addressing a state statute in *Duenas-Alvarez*, the Supreme Court concluded that to find that a statute creates a crime "outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination" to the statute's language. 549 U.S. at 193. The Court stated that there must be "a realistic probability that the State would apply its statute to conduct that falls outside the" generic crime listed in the aggravated felony statute. This is the case here. 8 U.S.C. § 1328 may encompass the importation of an alien for purposes of prostitution that is entirely "personal" in nature. For example, in *United States v. Clark*, 582 F.3d 607, 614-15 (5th Cir. 2009), the defendant paid for a Kenyan woman to travel to the United States, and then required sex as a repayment, expecting the woman "to continue prostitution in the United States, evidently with himself as her sole client." *Id*. at 611. Clark was convicted under 8 U.S.C. § 1328, and while the indictment and jury instructions included both the "prostitution" and the "other immoral purpose" prongs of the statute, the government's jury arguments "pointed to Clark's importing an alien for purposes of prostitution

and 'sexual exploitation,'" and the "general verdict could have been on *either* basis." *Id*. at 612; 615 (emphasis added). This actual application of the statute takes it out of the theoretical realm, and shows that the statute encompasses conduct that would not fit within the aggravated felony definition of INA § 101(a)(43)(K)(i); 8 U.S.C. § 1101(a)(43)(K)(i).

We are also not convinced that the aggravated felony provision at issue here invites a "circumstance-specific" approach that the Supreme Court found applicable in *Nijhawan v. Holder*, 129 S. Ct. 2294, 2302 (2009) (finding circumstance-specific approach appropriate to determine the loss amount under INA § 101(a)(43)(M)(I); 8 U.S.C. § 1101(a)(43)(M)(i), which includes as an aggravated felony "an offense that . . . involves fraud or deceit *in which* the loss to the victim or victims exceeds $10,000") (emphasis added). Subsection (K)(i), unlike the provision involved in *Nijhawan*, does not include any language such as "in which" that would indicate a need to peer into the conduct involved or the specific goal or circumstances of the conspiracy at issue; it only requires that the "*offense*" relate to the owning, controlling, managing or supervising of a prostitution business, a question the court is able to answer without resorting to the facts.

However, we note that the Court in *Duenas-Alvarez* also stated that to show a "realistic probability" that a statute creates a crime outside the generic definition of a listed crime in the aggravated felony provision, "an offender, of course, may show that the statute was so applied in his own case." 549 U.S. at 193. While the

plea agreement showed that Familia Rosario had knowledge of the object of the conspiracy and aided and abetted that conspiracy, it stretches the bounds of logic to suggest that his conduct, distributing condoms, was conduct that "related to" the owning, controlling, managing or supervising of a prostitution business. The government itself agreed to a minor role reduction at sentencing, but now argues that Familia Rosario's actions were "essential" to the operation of the business, and thus "relate to" the owning, controlling, managing or supervising of the businesses at issue. While condoms are mandatory for the operation of prostitution businesses in some jurisdictions, *see, e.g.*, Nev. Admin. Code ch. 441A, § 805 (2003), and are certainly "essential" in the sense that their use among commercial sex workers has proven to help stem the spread of HIV and other diseases, *see, e.g.*, Sean C. Clark, *Never In A Vacuum: Learning from the Thai Fight Against HIV*, 13 Wm. & Mary J. Women & L. 593 (2007), we note that there was no regulation requiring their use in this case, and that the business of prostitution has historically been able to be managed, owned, controlled and supervised without such precautions.

Therefore, we find that the portion of 8 U.S.C. § 1328, which prohibits the "importation into the United States of any alien for the purpose of prostitution," is not categorically an "offense that relates to the owning, controlling, managing or supervising of a prostitution business," and is therefore not an aggravated felony under INA § 101(a)(43)(K)(i); 8 U.S.C. § 1101(a)(43)(K)(i). The IJ and BIA erred in their use and application of the modified categorical approach.

## III.  CONCLUSION

We GRANT Familia Rosario's petition for review, VACATE the order of removal, and REMAND to the agency for consideration of his application for cancellation of removal.