NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 27, 2012*
Decided December 13, 2012

**Before**

JOEL M. FLAUM, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

JOHN J. THARP, JR., *District  Judge***

No. 12-2110

| | |
|---|---|
| ANDI TJONG, | Petition for Review of a Decision of the |
| *Petitioner*, | Board of Immigration Appeals |
| | |
| *v.* | No. A096 169 617 |
| | |
| ERIC H. HOLDER, JR., | |
| Attorney General of the United States, | |
| *Respondent*. | |

**O R D E R**

Petitioner Andi Tjong is a 55-year old Indonesian citizen of Chinese descent, and a Christian. He last entered the United States in January 2001 and overstayed his visa. On January 15, 2003, he applied for asylum, claiming refugee status based on his religion and

---

*We granted the petitioner's unopposed motion to waive oral argument. Thus, the appeal is submitted on the briefs and record. *See* Fed. R. App. P. 34(a)(2)(C).

**The Honorable John J. Tharp, Jr., of the United States District Court for the Northern District of Illinois, sitting by designation.

nationality. The Department of Homeland Security served Tjong with a notice of removal, and in response, Tjong asserted that he was entitled to asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). The immigration judge denied all forms of relief, and the Board of Immigration Appeals (the "Board") affirmed the decision on withholding of removal and determined that the asylum and CAT claims had been abandoned. We deny Tjong's petition for review.

At his hearing before the immigration judge, Tjong conceded his removability but argued that the treatment of Chinese Christians in Indonesia warranted asylum, withholding of removal, and protection under the CAT. He admitted that he applied for asylum more than one year after entering the United States. He explained that he did not apply earlier because "he didn't know anybody" and because he "didn't understand about asylum" until 2003.

Tjong testified that he became a Christian at the age of thirteen and attended a Christian school through sixth grade. He practiced his religion in Indonesia by attending a Methodist church in Medan, his hometown, and another Christian Church, Bethany, when he moved to Jakarta as a teenager. Tjong testified that practicing his religion in Indonesia was "not a problem," but that the Indonesian people do not like Christians and gave them "problems going to church." Specifically, people would "get mad and would be yelling at" the Christians, saying "you are a pig, you eat pig Chinese." In November 2000, Tjong's church was attacked by about 30 people. He ran but was caught and beaten with wood until he was "half unconscious" and incurred a cut in his eyebrow. A policeman outside the church "didn't do anything." Tjong drove himself to the hospital, where he stayed for two weeks "healing [his] cuts" and receiving medication. On another occasion in 2000, Tjong read in a newspaper that a different church in Jakarta had been bombed.

Tjong testified that he now attends Spanish Church in Ann Arbor, Michigan, where he lives. He owns a restaurant and has three children (one American-born) and a wife, although the marriage is not official. He is "a little bit afraid" to go back to Indonesia because of the bombing he read about in 2000 and riots he "heard from the news." Under cross examination, Tjong also stated that it was "correct" that he wanted to stay in the United States to "keep [his] restaurant and continue to make money."

Other evidence entered into the record consisted of the State Department's reports on conditions in Indonesia: the 2009 International Religious Freedom Report, the 2009 Background Report, and the 2008 Human Rights Report. These reports establish that Christians are a minority of ten percent or less of Indonesian citizens. The Indonesian constitution guarantees freedom of religion with respect to certain "recognized" religions, which include both Protestantism and Catholicism. However, incidents of harassment or violence of members of minority religions have been reported, especially against unrecognized sects, and local

government officials sometimes fail to adequately enforce religious freedom.

The immigration judge denied Tjong's requests for relief. First, the immigration judge determined that the asylum claim was barred because it was untimely (in general, asylum petitions must be submitted within one year of entry, 8 U.S.C. § 1158(a)(2)(B)) and Tjong had not established any extraordinary circumstances or shown a material change in country conditions that would excuse a late filing. Next the immigration judge concluded that, although Tjong had credibly testified to being a Christian and having Chinese ancestry, he had not established either past persecution or a well-founded fear of future persecution based upon those characteristics. Finally, because Tjong did not testify to fearing any treatment that rose to the level of torture, the immigration judge denied relief under the CAT.

The Board affirmed the immigration judge's decision. It addressed the substance of the withholding claim but concluded that Tjong waived appeal of the asylum and CAT claims because he failed to contest or "meaningfully address" those decisions before the Board. As to the withholding claim, the Board concluded that Tjong had failed to establish past persecution based on the single incident in which he was beaten outside his church and his knowledge of a bombing at a church he never attended. The Board concluded that this treatment, while "deplorable," did not surpass the threshold of persecution.

We review the decisions of both the Board and immigration judge where the Board's decision adopts and affirms the immigration judge's conclusion as well as providing its own analysis. *Familia Rosario v. Holder*, 655 F.3d 739, 743 (7th Cir. 2011). Although it does not alter the outcome, we note that the provisions of the REAL ID Act, Pub.L. No. 109–13, 119 Stat. 231 (May 11, 2005), do not apply to Tjong's case because he applied for asylum and other relief before its effective date. Instead, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), governs.

We first turn to the claims that the Board deemed waived, for if Tjong did not take his arguments to the Board first, we cannot review them on appeal. *See* 8 U.S.C. § 1252(d)(1) (1996). The government argues (with some support from our case law—*see, e.g., Margos v. Gonzales*, 443 F.3d 593, 599 (7th Cir. 2006)), that this is a jurisdictional bar, but we have previously endeavored to clarify that misunderstanding. *Issaq v. Holder*, 617 F.3d 962, 968 (7th Cir. 2010) (Rather than being "a jurisdictional rule in the strict sense," the exhaustion requirement is "a case-processing rule that limits the arguments available to an alien in this court when those arguments have not been raised properly at the agency level."); *Long-Gang Lin v. Holder*, 630 F.3d 536, 542 (7th Cir. 2010). Because it is not strictly jurisdictional, the exhaustion requirement is subject to exceptions. *Arobelidze v. Holder*, 653 F.3d 513, 516-17 (7th Cir. 2011).

However, Tjong has not established that any exception applies here; indeed, despite the government's waiver argument, Tjong fails even to acknowledge the Board's holding that he had abandoned certain claims. Instead, Tjong skips straight to arguing the merits of his asylum claim (he does not specifically address the CAT claim). With no suggestion from Tjong that the Board mistakenly determined that he abandoned his claims, we must conclude that Tjong failed to exhaust his administrative remedies and deny his petition for review to the extent it purports to appeal claims that the Board found waived. We note as well that, even if Tjong had presented his asylum claim to the Board, this Court would have lacked jurisdiction to review a determination that his asylum application was untimely and not excused by changed circumstances or extraordinary circumstances. *See* 8 U.S.C. § 1158(a)(3); *Restrepo v. Holder*, 610 F.3d 962, 964 (7th Cir. 2010).

Like the Board, then, we review only Tjong's claim for withholding of removal. We review the Board and immigration judge's decisions for substantial evidence, assessing "whether [their] determination was 'supported by reasonable, substantial, and probative evidence on the record considered as a whole,'" and reversing "only if the evidence compels a contrary conclusion." *Ahmed v. Ashcroft*, 348 F.3d 611, 615 (7th Cir. 2003) (quoting *INS v. Elias–Zacarias*, 502 U.S. 478, 481 (1992)).

An otherwise removable alien is entitled to withholding "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." *See* 8 U.S.C. § 1231(b)(3)(A). To meet this standard, an alien must show that he was subject to past persecution or that it is more likely than not that he will suffer persecution in the future if he is removed. 8 C.F.R. § 1208.16(b). A showing of past persecution creates the rebuttable presumption of future persecution. 8 C.F.R. § 1208.16(b)(1). To qualify for withholding of removal without proving past persecution, one must show "a clear probability" of future persecution, which is a higher standard than the "well-founded fear" of persecution that is required for asylum. *Toure v. Holder*, 624 F.3d 422, 428 (7th Cir. 2010); *see* 8 C.F.R. § 1208.16(b)(2).

Tjong contends that he established past persecution with his testimony about the taunts he endured based on his Chinese ancestry and the attack at his church. Neither suffices. First, the verbal slurs—being called a "pig" or "Chinese pig"—do not rise to the level of persecution. "Derogatory name-calling rarely if ever surpasses mere harassment to persecution." *Borovsky v. Holder*, 612 F.3d 917, 922 (7th Cir. 2010) (slurs such as "Jewish pig," while offensive, are not persecution).

And despite Tjong's contention that the church attack was "more than adequate" to show that he was persecuted for being Christian, we cannot say that the immigration judge and

Board lacked substantial evidence for their conclusions otherwise. This was a single incident, which, to qualify as "persecution" must inflict *severe* harm. *Nzeve v. Holder*, 582 F.3d 678, 683-84 (7th Cir. 2009). Despite a two-week hospital stay, Tjong supplied no details of his injuries other than his testimony that he received a fingernail-size cut on his eyebrow and was "dizzy." This is not the degree of injury that we have found severe. *See Zhu v. Gonzales*, 465 F.3d 316, 320 (7th Cir. 2006) (head wound requiring seven stitches not sufficiently severe to be persecution); *Prela v. Ashcroft*, 394 F.3d 515, 518 (7th Cir. 2005) (being detained, harassed for money, and beaten, causing hand injury, not persecution); *Dandan v. Ashcroft*, 339 F.3d 567, 573-74 (7th Cir. 2003) (three-day detention without food and beatings that caused facial swelling not necessarily persecution). Tjong's single violent encounter with unknown attackers does not compel a finding that he suffered "the use of *significant* physical force . . . or the infliction of comparable physical harm without direct application of force . . . or nonphysical harm of equal gravity." *See Stanojkova v. Holder*, 645 F.3d 943, 948 (7th Cir. 2011).

Furthermore, Tjong presented no evidence of governmental involvement in this attack, which is the *sine qua non* of persecution. *See Ingmantoro v. Mukasey*, 550 F.3d 646, 650 (7th Cir. 2008). There are limited exceptions—government complicity in or willful failure to prevent the harm—that Tjong did not address, except to state that after the attack he saw a single policeman who did nothing. (Tjong did not say that he asked the police officer for help or tried to file any report of the incident.) Indeed, in his testimony, Tjong acknowledged that the government never tried to stop him from practicing his religion; to the contrary, he attributed any problems he encountered in that regard to "the people." And Tjong does not challenge the findings that he had lived in two cities in Indonesia, attended a Christian school, and practiced his religion without incident for most of his life until the single attack on his church.

Tjong next contends that he showed a clear probability of future persecution in Indonesia. To make this showing, he relies on the 2010 and 2011 International Religious Freedom Reports, which he says prove a "pattern and practice" of persecution of Christians in Indonesia that is so "widespread, continuing, and worsening" as to show a clear probability of future persecution. Tjong's first problem is that these two reports are not part of the administrative record. Tjong moved this Court to take judicial notice of the reports. We agreed to take his motions along with the merits, and we now deny them. The reports were released while the administrative appeal was pending—indeed, the 2010 report came out over a year before the Board's decision. Yet Tjong did not attempt to supplement the administrative record and present his argument to the Board in the first instance. Exhaustion aside, we cannot consider evidence outside the record. 8 U.S.C. § 1252(b)(4)(A)("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based."); *Zheng v. Holder*, 698 F.3d 710, 714 n.2 (8th Cir. 2012).

The evidence of record reflects the official recognition of Protestantism and Catholicism by the Indonesian government and the constitutional protection of religious freedom for their adherents. The incidents of violence, harassment, and mistreatment of religious minorities described in the record overwhelmingly (although not exclusively) relate to the Muslim reformist sect of the Ahmadiyya Qadiyani, with which Tjong has professed no affiliation.

Tjong essentially asks that we categorically conclude that all Chinese Christians face persecution in Indonesia to such an extent that there is a "clear probability" that he will be persecuted if he returns. *See Mitreva v. Gonzales*, 417 F.3d 761 (7th Cir. 2005) (explaining "pattern or practice" standard). That persecution, of course, "must be perpetrated or tolerated by state actors." *Id*. at 765. But Tjong fails to draw our attention to any particular portion of his testimony or the State Department reports in the record that would warrant a conclusion that Chinese Christians *per se* are subject to persecution by the Indonesian government.

Indeed, this Court has twice before held that a petitioner fell short of proving a pattern or practice of persecuting ethnic Chinese Christians in Indonesia. *Ingmantoro*, 550 F.3d at 650; *Kaharudin v. Gonzales*, 500 F.3d 619, 624 (7th Cir. 2007). We were careful to limit those holdings to the facts presented, so as not to foreclose the argument of a future petitioner who developed a fuller or different record of the Indonesian government's treatment of Chinese Christians. *See Ingmantoro*, 550 F.3d at 651. But Tjong's is not that case; as far as we discern, the record here does not materially differ from that in *Ingmantoro* in that it consists only of State Department reports of a similar vintage. We repeat our caveat that a future case might produce a different result; however, Tjong has fallen short of the evidentiary threshold that would compel the conclusion that a pattern of persecution exists.

On appeal Tjong makes only this pattern-or-practice argument to justify a fear of future persecution. He does not otherwise argue that there is a clear probability of future persecution, and none could succeed on this record. In addition to testifying that he was only "a little" afraid of returning and that he wished to remain in the United States to continue running his business, he also stated that the violence he feared occurred in areas where he didn't reside and which he could avoid by living elsewhere in the country.

Because substantial evidence supports the denial of Tjong's request for withholding of removal, and because Tjong failed to present his requests for asylum and relief under the CAT to the Board, the petition for review is DENIED.