Justice ALITO, dissenting.
The Court's decision in this case is not supported by the language of the Immigration and Nationality Act (INA) or by this Court's precedents, and it leads to results that Congress clearly did not intend.
Under the INA, aliens[1] who are convicted of certain offenses may be removed *1696 from this country, 8 U.S.C. § 1227(a)(2) (2006 ed. and Supp. V), but in many instances, the Attorney General (acting through the Board of Immigration Appeals (BIA)) has the discretion to cancel removal, §§ 1229b(a), (b). Aliens convicted of especially serious crimes, however, are ineligible for cancellation of removal. § 1229b(a)(3) (2006 ed.). Among the serious crimes that carry this consequence is "illicit trafficking in a controlled substance." § 1101(a)(43)(B).
Under the Court's holding today, however, drug traffickers in about half the States are granted a dispensation. In those States, even if an alien is convicted of possessing tons of marijuana with the intent to distribute, the alien is eligible to remain in this country. Large-scale marijuana distribution is a major source of income for some of the world's most dangerous drug cartels, Dept. of Justice, National Drug Intelligence Center, National Drug Threat Assessment 2, 7 (2011), but the Court now holds that an alien convicted of *211 participating in such activity may petition to remain in this country.
The Court's decision also means that the consequences of a conviction for illegal possession with intent to distribute will vary radically depending on the State in which the case is prosecuted. Consider, for example, an alien who is arrested near the Georgia-Florida border in possession of a large supply of marijuana. Under the Court's holding, if the alien is prosecuted and convicted in Georgia for possession with intent to distribute, he is eligible for cancellation of removal. But if instead he is caught on the Florida side of the line and is convicted in a Florida court-where possession with intent to distribute a small amount of marijuana for no remuneration is covered by a separate statutory provision, compare Fla. Stat. § 893.13(3) (2010) with § 893.13(1)(a)(2) -the alien is likely to be ineligible. Can this be what Congress intended?
I
Certainly the text of the INA does not support such a result. In analyzing the relevant INA provisions, the starting point is 8 U.S.C. § 1229b(a)(3), which provides that a lawful permanent resident alien subject to removal may apply for discretionary cancellation of removal if he has not been convicted of any "aggravated felony." The term "aggravated felony" encompasses "illicit tracking in a controlled substance ... including a drug trafficking crime (as defined in [ 18 U.S.C. § 924(c) ] )." 8 U.S.C. § 1101(a)(43)(B). And this latter provision defines a "drug trafficking crime" to include "any felony punishable under the Controlled Substances Act ( 21 U.S.C. 801 et seq. )." 18 U.S.C. § 924(c)(2). Thus "any felony punishable under the [CSA]" is an "aggravated felony."
Where an alien has a prior federal conviction, it is a straightforward matter to determine whether the conviction was for a "felony punishable under the [CSA]." But 8 U.S.C. § 1101(a)(43) introduces a complication. That provision *212 states that the statutory definition of "aggravated felony" " applies to an offense described in this paragraph whether in violation of Federal or State law ." (Emphasis added.) As noted, the statutory definition of "aggravated felony" includes a "felony punishable under the [CSA]," and therefore *1697 § 1101(a)(43)(B) makes it necessary to determine what is meant by a state "offense" that is a "felony punishable under the [CSA]."
What § 1101(a)(43) obviously contemplates is that the BIA or a court will identify conduct associated with the state offense and then determine whether that conduct would have supported a qualifying conviction under the federal CSA.[2] Identifying and evaluating this relevant conduct is the question that confounds the Court's analysis. Before turning to that question, however, some preliminary principles should be established.
In Lopez v. Gonzales, 549 U.S. 47, 50, 127 S.Ct. 625, 166 L.Ed.2d 462 (2006), we held that felony status is controlled by federal, not state, law. As a result, once the relevant conduct is identified, it must be determined whether proof of that conduct would support a felony conviction under the CSA. The federal definition of a felony is a crime punishable by imprisonment for more than one year. 18 U.S.C. § 3559(a)(1)-(5). Consequently, if the *213 proof of the relevant conduct would support a conviction under the CSA for which the maximum term of imprisonment is more than one year, the state conviction qualifies as a conviction for an "aggravated felony."
II
This brings us to the central question presented in this case: how to determine and evaluate the conduct that constitutes the state "offense." One possibility is that actual conduct is irrelevant, and that only the elements of the state crime for which the alien was convicted matter. We have called this the "categorical approach," Taylor v. United States, 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), and we have generally used this approach in determining whether a state conviction falls within a federal definition of a crime, see id., at 600-601, 110 S.Ct. 2143 (" Section 924(e)(2)(B)(i) defines 'violent felony' as any crime punishable by imprisonment for more than a year that 'has as an element'-not any crime that, in a particular case, involves-the use or threat of force. Read in this context, the phrase 'is burglary' in § 924(e)(2)(B)(ii) most likely refers to the elements of the statute of conviction, not to the facts of each defendant's conduct"). But, as will be discussed below, we have also departed in important ways from a pure categorical approach.
The Court's opinion in this case conveys the impression that its analysis is based on the categorical approach, but that is simply not so. On the contrary, a pure categorical approach leads very quickly to the conclusion that petitioner's Georgia conviction was a conviction for an "aggravated felony."
The elements of the Georgia offense were as follows: knowledge, possession of *1698 marijuana, and the intent to distribute it. Ga.Code Ann. § 16-13-30(j)(1) (2007); Jackson v. State, 295 Ga.App. 427, 435, n. 28, 671 S.E.2d 902, 909, n. 28 (2009). Proof of those elements would be sufficient to support a conviction under 21 U.S.C. § 841(a), and the maximum *214 punishment for that offense is imprisonment for up to five years, § 841(b)(1)(D) (2006 ed., Supp. V), more than enough to qualify for felony treatment. Thus, under a pure categorical approach, petitioner's Georgia conviction would qualify as a conviction for an "aggravated felony" and would render him ineligible for cancellation of removal.
The Court departs from this analysis because § 841(b)(4) provides a means by which a defendant convicted of violating § 841(a) (2006 ed.) may lower the maximum term of imprisonment to no more than one year. That provision states that "any person who violates [ § 841(a) ] by distributing a small amount of marihuana for no remuneration shall be treated as" a defendant convicted of simple possession, and a defendant convicted of that lesser offense faces a maximum punishment of one year's imprisonment (provided that the defendant does not have a prior simple possession conviction), § 844 (2006 ed., Supp. V). Reading this provision together with § 841(a), the Court proceeds as if the CSA created a two-tiered possession-with-intent-to-distribute offense: a base offense that is punishable as a misdemeanor and a second-tier offense (possession with intent to distribute more than a "small amount" of marijuana or possession with intent to distribute for remuneration) that is punishable as a felony.
If the CSA actually created such a two-tiered offense, the pure categorical approach would lead to the conclusion that petitioner's Georgia conviction was not for an "aggravated felony." The elements of the Georgia offense would not suffice to prove the second-tier offense, which would require proof that petitioner possessed more than a "small amount" of marijuana or that he intended to obtain remuneration for its distribution. Instead, proof of the elements of the Georgia crime would merely establish a violation of the base offense, which would be a misdemeanor.
The CSA, however, does not contain any such two-tiered provision. And § 841(b)(4) does not alter the elements of the *215 § 841(a) offense. As the Court notes, every Court of Appeals to consider the question has held that § 841(a) is the default offense and that § 841(b)(4) is only a mitigating sentencing guideline, see United States v. Outen, 286 F.3d 622, 636-639 (C.A.2 2002) (Sotomayor, J.) (describing § 841(b)(4) as a " mitigating exception"); United States v. Hamlin, 319 F.3d 666, 670 (C.A.4 2003) (collecting cases), and the Court does not disagree, ante, at 1687 - 1689.
Confirmation of this interpretation is provided by the use of the term "small amount" in § 841(b)(4). If § 841(b)(4) had been meant to alter the elements of § 841(a), Congress surely would not have used such a vague term. Due process requires that the elements of a criminal statute be defined with specificity. Connally v. General Constr. Co., 269 U.S. 385, 393, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Accordingly, it is apparent that § 841(b)(4) does not modify the elements of § 841(a) but instead constitutes what is in essence a mandatory sentencing guideline. Under this provision, if a defendant is convicted of violating § 841(a), the defendant may attempt to prove that he possessed only a "small amount" of marijuana and that he did not intend to obtain remuneration for its distribution. If the defendant succeeds in convincing the sentencing judge, the maximum term of imprisonment is lowered to one year.
*1699 In sum, contrary to the impression that the Court's opinion seeks to convey, the Court's analysis does not follow the pure categorical approach.
III
Nor is the Court's analysis supported by prior case law. The Court claims that its approach follows from our decision in Carachuri-Rosendo v. Holder, 560 U.S. ----, 130 S.Ct. 2577, 177 L.Ed.2d 68 (2010), but that case-unlike the Court's opinion-faithfully applied the pure categorical approach.
In Carachuri-Rosendo, the alien had been convicted in a Texas court for simple possession of a controlled substance. Id ., at ----, 130 S.Ct., at 2583. At the time of that conviction, Carachuri-Rosendo had a prior state conviction for simple *216 possession, but this fact was not charged or proved at his trial and was apparently not taken into account in setting his sentence, which was 10 days in jail. Id ., at ----, ---- - ----, 130 S.Ct., at 2582-2583. Arguing that Carachuri-Rosendo was ineligible for cancellation of removal, the Government maintained that his second simple possession conviction qualified under the INA as a conviction for an " aggravated felony." Id ., at ----, 130 S.Ct., at 2582-2583. This was so, the Government contended, because, if Carachuri-Rosendo's second simple-possession prosecution had been held in federal court, he could have been punished by a sentence of up to two years due to his prior simple possession conviction. Id ., at ----, 130 S.Ct., at 2582-2583.
This more severe sentence, however, would have required the federal prosecutor to file a formal charge alleging the prior conviction; Carachuri-Rosendo would have been given the opportunity to defend against that charge; and the heightened sentence could not have been imposed unless the court found that the prior conviction had occurred. Id ., at ----, 130 S.Ct., at 2587-2588.
Our rejection of the Government's argument thus represented a straightforward application of the pure categorical approach. The elements of the Texas offense for which Carachuri-Rosendo was convicted were knowledge or intent, possession of a controlled substance without a prescription, and nothing more. Id., at ----, 130 S.Ct., at 2583; Tex. Health & Safety Code Ann. § 481.117(a), (b) (West 2010). Proof of a prior simple possession conviction was not required, and no such proof appears to have been offered. The maximum penalty that could have been imposed under federal law for simple possession (without proof of a prior simple possession conviction) was one year's imprisonment. Thus, proof in federal court of the elements of the Texas offense would not have permitted a felony-length sentence, and consequently the state conviction did not qualify as a felony punishable under the CSA.
IV
*217 Unsupported by either the categorical approach or our prior cases, the decision of the Court rests instead on the Court's belief-which I share-that the application of the pure categorical approach in this case would lead to results that Congress surely did not intend.
Suppose that an alien who is found to possess two marijuana cigarettes is convicted in a state court for possession with intent to distribute based on evidence that he intended to give one of the cigarettes to a friend. Under the pure categorical approach, this alien would be regarded as having committed an "aggravated felony." But this classification is plainly out of step with the CSA's assessment of the severity of the alien's crime because under the CSA
*1700 the alien could obtain treatment as a misdemeanant by taking advantage of 21 U.S.C. § 841(b)(4).
For this reason, I agree with the Court that such an alien should not be treated as having committed an "aggravated felony." In order to avoid this result, however, it is necessary to depart from the categorical approach, and that is what the Court has done. But the particular way in which the Court has departed has little to recommend it.
To begin, the Court's approach is analytically confused. As already discussed, the Court treats § 841(b)(4) as if it modified the elements of § 841(a), when in fact § 841(b)(4) does no such thing. And the Court obviously knows this because it does not suggest that § 841(b)(4) changes the elements of § 841(a) for criminal law purposes.[3]
*218 In addition, the Court's approach leads to the strange and disruptive results noted at the beginning of this opinion. As an initial matter, it leads to major drug trafficking crimes in about half the States being excluded from the category of "illicit trafficking in a controlled substance." Moreover, it leads to significant disparities between equally culpable defendants. We adopted the categorical approach to avoid disparities in our treatment of defendants convicted in different States for committing the same criminal conduct. See Taylor, 495 U.S., at 590-591, 110 S.Ct. 2143 (rejecting the view that state law determined the meaning of "burglary" because "[t]hat would mean that a person convicted of unlawful possession of a firearm would, or would not, receive a sentence enhancement based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct 'burglary' "). Yet the Court reintroduces significant disparity into our treatment of drug offenders. All of this can be avoided by candidly acknowledging that the categorical approach is not the be-all and end-all.
When Congress wishes to make federal law dependent on certain prior state convictions, it faces a difficult task. The INA provisions discussed above confront this problem, and their clear objective is to identify categories of criminal conduct that evidence such a high degree of societal danger that an alien found to have engaged in such conduct should not be allowed to obtain permission to remain in this country. Since the vast majority of crimes are prosecuted in the state courts, Congress naturally looked to state, as well as federal, convictions as a metric for identifying these dangerous aliens.
*219 But state criminal codes vary widely, and some state crimes are defined so broadly that they encompass both very serious and much less serious cases. In cases involving such state provisions, a *1701 pure categorical approach may frustrate Congress' objective.
The Court has said that the categorical approach finds support in the term "conviction." Taylor, supra, at 600, 110 S.Ct. 2143; Shepard v. United States, 544 U.S. 13, 19, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). But the Court has never held that a pure categorical approach is dictated by the use of that term,[4] and I do not think that it is. In ordinary speech, when it is said that a person was convicted of or for doing something, the "something" may include facts that go beyond the bare elements of the relevant criminal offense. For example, it might be said that an art thief was convicted of or for stealing a Rembrandt oil painting even though neither the identity of the artist nor the medium used in the painting are elements of the standard offense of larceny. See 3 W. LaFave, Substantive Criminal Law § 19.1(a) (2d ed.2003).
For these reasons, departures from the categorical approach are warranted, and this Court has already sanctioned such departures in several circumstances. See Taylor, supra, at 602, 110 S.Ct. 2143 (modified categorical approach); Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007) (categorical approach does not exclude state-law convictions unless there is "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime"); Nijhawan v. Holder, 557 U.S. 29, 32, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009) (interpreting an enumerated "aggravated felony" in 8 U.S.C. § 1101(a)(43) not to be a generic crime).
*220 Consistent with the flexibility that the Court has already recognized, I would hold that the categorical approach is not controlling where the state conviction at issue was based on a state statute that encompasses both a substantial number of cases that qualify under the federal standard and a substantial number that do not. In such situations, it is appropriate to look beyond the elements of the state offense and to rely as well on facts that were admitted in state court or that, taking a realistic view, were clearly proved. Such a look beyond the elements is particularly appropriate in a case like this, which involves a civil proceeding before an expert agency that regularly undertakes factual inquiries far more daunting than any that would be involved here. See, e.g., Negusie v. Holder, 555 U.S. 511, 129 S.Ct. 1159, 173 L.Ed.2d 20 (2009).
Applying this approach in the present case, what we find is that the Georgia statute under which petitioner was convicted broadly encompasses both relatively minor offenses (possession of a small amount of marijuana with the intent to share) and serious crimes (possession with intent to distribute large amounts of marijuana in exchange for millions of dollars of profit). We also find that petitioner had the opportunity before the BIA to show that his criminal conduct fell into the category of relatively minor offenses carved out by § 841(b)(4). Administrative Record 16-26. The BIA takes the entirely sensible view that an alien who is convicted for possession with intent to distribute may show that his conviction was not for an "aggravated felony" by proving that his conduct fell within § 841(b)(4).
*1702 Matter of Castro Rodriguez, 25 I. & N. Dec. 698, 701-702 (2012). Petitioner, for whatever reason, availed himself only of the opportunity to show that his conviction had involved a small amount of marijuana and did not present evidence-or even contend-that his offense had not involved remuneration. Administrative Record 16-26, 37. As a result, I think we have no alternative but to affirm the decision of the Court of Appeals, which in turn affirmed the BIA.

Section 16-13-31(c) (Supp.2012) increases the punishment for trafficking in marijuana, while § 16-13-2(b) (2011) decreases the punishment for simple possession of 1 ounce or less of marijuana. Neither provision is applicable to Moncrieffe's offense of possession of marijuana with intent to distribute.
The Court correctly points out that Moncrieffe was sentenced pursuant to § 16-13-2(a) because he was a first-time offender. Ante, at 1683. That provision does not alter the felony status of the offense. Rather, it gives courts discretion to impose probation instead of imprisonment and to do so without entering a conviction. As the majority recognizes, petitioner has waived any argument that he was not convicted for purposes of the Immigration and Nationality Act. Ante, at 1683, n. 2.

See 8 U.S.C. § 1227(a)(2)(A)(iii) (providing that aliens convicted of an "aggravated felony" after admission are deportable); § 1229b(a)(3) (providing that aliens convicted of an "aggravated felony" are ineligible for cancellation of removal); § 1101(a)(43)(B) (defining "aggravated felony" as "illicit trafficking in a controlled substance ... including a drug trafficking crime (as defined in [18 U.S.C. § 924(c) ] )"); 18 U.S.C. § 924(c)(2) (defining "drug trafficking crime" as "any felony punishable under the [CSA]").

The Court defends its interpretation of 21 U.S.C. § 841(a), (b)(4) by arguing that Carachuri-Rosendo v. Holder, 560 U.S. ----, 130 S.Ct. 2577, 177 L.Ed.2d 68 (2010), rejected any recourse to a "hypothetical approach" for determining how a criminal prosecution likely would have proceeded, see ante, at 1688, and that is true enough. But, as discussed above, see n. 2, supra, just because the categorical approach does not require conjecture as to whether a hypothetical federal prosecutor would be likely to charge and prove a prior conviction does not mean that it also precludes analysis of the structure of the federal criminal statute at hand. Indeed, our categorical-approach cases have done little else. See, e.g., Carachuri-Rosendo, supra, at ----, 130 S.Ct., at 2587-2588 (discussing procedural protections Carachuri-Rosendo would have enjoyed had he been prosecuted federally); Gonzales v. Duenas-Alvarez, 549 U.S. 183, 185, 189-194, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007) (the term "theft offense" in 8 U.S.C. § 1101(a)(43)(G) includes the crime of aiding and abetting a theft offense).

Instead, the Court adopted the categorical approach based on a combination of factors, including judicial efficiency. See Taylor, 495 U.S., at 601, 110 S.Ct. 2143 ("[T]he practical difficulties and potential unfairness of a factual approach are daunting. In all cases where the Government alleges that the defendant's actual conduct would fit the generic definition of burglary, the trial court would have to determine what that conduct was").