Justice Breyer
delivered the opinion of the Court.
Immigration law provides for removal from the United States of an alien convicted of “a theft offense (including receipt of stolen property) ... for which the term of imprisonment [is] at least one year.” 8 U. S. C. § 1101(a)(43)(G) (emphasis added; footnote omitted); § 1227(a)(2)(A). The question here is whether the term “theft offense” in this federal statute includes the crime of “aiding and abetting” a theft offense. We hold that it does. And we vacate a Ninth Circuit determination to the contrary.
I
The Immigration and Nationality Act, 66 Stat. 163, as amended, 8 U. S. C. § 1101 et seq. (2000 ed. and Supp. IV), lists a set of offenses, conviction for any one of which subjects certain aliens to removal from the United States, § 1227(a). In determining whether a conviction (say, a conviction for violating a state criminal law that forbids the taking of property without permission) falls within the scope of *186 a listed offense (e. g., “theft offense”), the lower courts uniformly have applied the approach this Court set forth in Taylor v. United States, 495 U. S. 575 (1990). E. g., Soliman v. Gonzales, 419 F. 3d 276, 284 (CA4 2005); Abimbola v. Ashcroft, 378 F. 3d 173, 176-177 (CA2 2004); Huerta-Guevara v. Ashcroft, 321 F. 3d 883, 886-888 (CA9 2003); Hernandez-Mancilla v. INS, 246 F. 3d 1002, 1008-1009 (CA7 2001).
Taylor concerned offenses listed in the federal Armed Career Criminal Act, 18 U. S. C. § 924(e) (2000 ed. and Supp. IV). That Act mandates a lengthy prison sentence for offenders with previous convictions for, e. g., a “violent felony”; and the Act sets forth certain specific crimes, e. g., “burglary,” included in this category. The Court, in Taylor, considered whether a conviction for violating a state statute criminalizing certain burglary-like behavior fell within the listed federal term “burglary.” 495 U. S., at 589, 598.
The Court held that Congress meant its listed term “burglary” to refer to a specific crime, i. e., “ ‘burglary’ ” in “the generic sense in which the term is now used in the criminal codes of most States.” Id., at 598 (emphasis added). The Court also held that a state conviction qualifies as a burglary conviction, “regardless of” the “exact [state] definition or label” as long as it has the “basic elements” of “generic” burglary, namely, “unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.” Id., at 599. The Court added that, when a sentencing court seeks to determine whether a particular prior conviction was for a generic burglary offense, it should normally look not to the facts of the particular prior case, but rather to the state statute defining the crime of conviction. Id., at 599-600.
The Court further noted that a “few States’ burglary statutes” “define burglary more broadly” to include both a (generically defined) listed crime and also one or more nonlisted crimes. Id., at 599. For example, Massachusetts defines “burglary” as including not only breaking into “ ‘a building’ ” *187 but also breaking into a “vehicle” (which falls outside the generic definition of “burglary,” for a car is not a “ ‘building or structure’ ”). See Shepard v. United States, 544 U. S. 13, 16, 17 (2005); see also Taylor, 495 U. S., at 599 (discussing Missouri burglary statutes). In such cases the Court’s “categorical approach” permits the sentencing court “to go beyond the mere fact of conviction” in order to determine whether the earlier “jury was actually required to find all the elements of generic burglary.” Id., at 602; see also Conteh v. Gonzales, 461 F. 3d 45, 54 (CA1 2006) (observing that some courts refer to this step of the Taylor inquiry as a “modified categorical approach”). “For example,” the sentencing court might examine “the indictment or information and jury instructions” in the earlier case. 495 U. S., at 602. In Shepard, we added that, in a nonjury case, the sentencing court might examine not only the “charging document” but also “the terms of a plea agreement,” the “transcript of colloquy between judge and defendant,” or “some comparable judicial record” of information about the “factual basis for the plea.” 544 U. S., at 26.
II
The case before us concerns the application of the framework just set forth to Luis Dueñas-Alvarez, the respondent here, a permanent resident alien of the United States. In 2002, Duenas-Alvarez was convicted of violating Cal. Veh. Code Ann. § 10851(a) (West 2000). That section states:
“Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, or any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing, is guilty of a public offense.” (Emphasis added.)
*188 After Duenas-Alvarez was convicted, the Federal Government, claiming that the conviction was for a generic theft offense, began removal proceedings. A Federal Immigration Judge, agreeing with the Government that the California offense is “a theft offense ... for which the term of imprisonment [is] at least one year,” found Duenas-Alvarez removable. 8 U. S. C. § 1101(a)(43)(G) (footnote omitted); § 1227(a)(2)(A). The Board of Immigration Appeals (BIA) affirmed. Duenas-Alvarez sought review of the BIA’s decision in the Court of Appeals for the Ninth Circuit.
While respondent’s petition for court review was pending, the Ninth Circuit, in Penuliar v. Ashcroft, 395 F. 3d 1037 (2005), held that the relevant California Vehicle Code provision, § 1.0851(a), sweeps more broadly than generic theft. See id., at 1044-1045. In particular, the court said that generic theft has as an element the taking or control of others’ property. But, the court added, the California statutory phrase “‘[who] is a party or an accessory ... or an accomplice’” would permit conviction “for aiding and abetting a theft.” Id., at 1044 (emphasis deleted). And the court believed that one might “aid” or “abet” a theft without taking or controlling property. Id., at 1044-1045 (citing Martinez-Perez v. Ashcroft, 393 F. 3d 1018 (CA9 2004), withdrawn and amended, 417 F. 3d 1022 (2005)). Hence, in the Court of Appeals’ view, the provision must cover some generically defined “theft” crimes and also some other crimes (aiding and abetting crimes) that, because they are not generically defined “theft” crimes, fall outside the scope of the term “theft” in the immigration statute. 395 F. 3d, at 1044-1045.
The Ninth Circuit subsequently heard Duenas-Alvarez’s petition for review and summarily remanded the case to the agency for further proceedings in light of Penuliar. 176 Fed. Appx. 820 (2006). We granted the Government’s petition for certiorari in order to consider the legal validity of the Ninth Circuit’s holding set forth in Penuliar and applied *189 here, namely, the holding that “aiding and abetting” a theft is not itself a crime that falls within the generic definition of theft. We conclude that the Ninth Circuit erred.
III
The Ninth Circuit, like other Circuits and the BIA, accepted as a generic definition of theft, the “taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent.” Penuliar v. Gonzales, 435 F. 3d 961, 969 (2006) (internal quotation marks omitted). See Abimbola, 378 F. 3d, at 176 (analyzing the BIA’s definition and citing cases from three other Circuits, including the Ninth Circuit, approving that definition). The question before us is whether one who aids or abets a theft falls, like a principal, within the scope of this generic definition. We conclude that he does.
The common law divided participants in a felony into four basic categories: (1) first-degree principals, those who actually committed the crime in question; (2) second-degree principals, aiders and abettors present at the scene of the crime; (3) accessories before the fact, aiders and abettors who helped the principal before the basic criminal event took place; and (4) accessories after the fact, persons who helped the principal after the basic criminal event took place. See Standefer v. United States, 447 U. S. 10, 15 (1980). In the course of the 20th century, however, American jurisdictions eliminated the distinction among the first three categories. Id., at 16-19; Nye & Nissen v. United States, 336 U. S. 613, 618 (1949).
Indeed, every jurisdiction — all States and the Federal Government — has “expressly abrogated the distinction” among principals and aiders and abettors who fall into the second and third categories. 2 W. LaFave, Substantive *190 Criminal Law § 13.1(e), p. 333 (2d ed. 2003) (LaFave). The Solicitor General has presented us with a comprehensive account of the law of all States and federal jurisdictions as well. And we have verified that these jurisdictions treat similarly principals and aiders and abettors who fall into the second or third common-law category. See Appendix A, infra. Since criminal law now uniformly treats those who fall into the first three categories alike, “the generic sense in which” the term “theft” “is now used in the criminal codes of most States,” Taylor, 495 U. S., at 598, covers such “aiders and abettors” as well as principals. And the criminal activities of these aiders and abettors of a generic theft must themselves fall within the scope of the term “theft” in the federal statute.
A
Duenas-Alvarez does not defend the Ninth Circuit’s position. He agrees with the Government that generically speaking the law treats aiders and abettors during and before the crime the same way it treats principals; and that the immigration statute must then treat them similarly as well. Instead, Duenas-Alvarez argues that the California Vehicle Code provision in other ways reaches beyond generic theft to cover certain nongeneric crimes.
Duenas-Alvarez points out that California defines “aiding and abetting” such that an aider and abettor is criminally responsible not only for the crime he intends, but also for any crime that “naturally and probably” results from his intended crime. People v. Durham, 70 Cal. 2d 171, 181, 449 P. 2d 198, 204 (1969) (“‘aider and abettor . . . liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged’ ” (quoting People v. Villa, 156 Cal. App. 2d 128, 134 (1957); emphasis deleted)). This fact alone does not show that the statute covers a non-generic theft crime, for relatively few jurisdictions (only 10 in Dueñas-Alvarez’s own view) have expressly rejected the *191 “natural and probable consequences” doctrine. See Brief for Respondent 21-22; Appendix B, infra. Moreover, many States and the Federal Government apply some form or variation of that doctrine, or permit jury inferences of intent in circumstances similar to those in which California has applied the doctrine, as explained below. See Appendix C, infra. To succeed, Duenas-Alvarez must show something special about California’s version of the doctrine — for example, that California in applying it criminalizes conduct that most other States would not consider “theft.”
Duenas-Alvarez attempts to make just such a showing. In particular, he says that California’s doctrine, unlike that of most other States, makes a defendant criminally liable for conduct that the defendant did not intend, not even as a known or almost certain byproduct of the defendant’s intentional acts. See 1 LaFave § 5.2(a), at 341 (person intends that which he knows “is practically certain to follow from his conduct”). At oral argument, Duenas-Alvarez’s counsel suggested that California’s doctrine, for example, might hold an individual who wrongly bought liquor for an underage drinker criminally responsible for that young drinker’s later (unforeseen) reckless driving. See Tr. of Oral Arg. 44. And Duenas-Alvarez refers to several California cases in order to prove his point. See Brief for Respondent 19.
We have reviewed those cases, however, and we cannot agree that they show that California’s law is somehow special. In the first case, People v. Nguyen, 21 Cal. App. 4th 518, 26 Cal. Rptr. 2d 323 (1993), the Third Appellate District in California upheld the jury conviction of individuals who had aided several robberies at houses of prostitution, for aiding and abetting a sexual assault used by one of the individuals to convince a proprietor, by frightening her, to give up property. Id., at 528, 533-534, 26 Cal. Rptr. 2d, at 329, 333. The court, in upholding the verdict, wrote that “knowledge of another’s criminal purpose is not sufficient for aiding and *192 abetting; the defendant must also share that purpose or intend to commit, encourage, or facilitate the commission of the crime.” Id., at 530, 26 Cal. Rptr. 2d, at 330 (emphasis added). The court added that “[wjhile the defendants participated in the criminal endeavor the foreseeability of sexual assault went from possible or likely to certain, yet defendants continued to lend their aid and assistance to the endeavor.” Id., at 534, 26 Cal. Rptr. 2d, at 333 (emphasis added). The court said that the jury could find that the defendants’
“continuing participation in the criminal endeavor aided the perpetrators by providing the control and security they needed to tarry long enough to commit the sexual offense, by helping to convince the victim that resistance would be useless, and by dissuading the victim’s employee from any notion she may have formed of going to the victim’s assistance.”
And the court concluded:
“Under these circumstances it will not do for defendants to assert that they were concerned only with robbery and bear no responsibility for the sexual assault.” Id., at 533-534, 26 Cal. Rptr. 2d, at 333.
People v. Simpson, 66 Cal. App. 2d 319 (1944), affirmed a kidnaping and robbery conviction on an aiding and abetting theory. Id., at 322. Although the defendant argued to the appeals court that she and her compatriots had not planned to kidnap the robbery victim, the record showed that she had brought the gun used to intimidate the victim while he was tied up and placed in a car, in which she and her co-robbers rode with the victim to another location while they robbed him. Id., at 322-323. As in Nguyen, the court, noting that kidnaping was the means by which the robbery was committed, found that the defendant had the requisite “motive,” or intent to commit the kidnaping. 66 Cal. App. 2d, at 326.
*193 People v. Montes, 74 Cal. App. 4th 1050, 88 Cal. Rptr. 2d 482 (1999), affirmed an attempted murder conviction where a confederate of the defendant shot the victim after the defendant committed armed assault, simple assault, and breach of the peace. Id., at 1055, 88 Cal. Rptr. 2d, at 485. The court found that the conduct for which the appellant was charged with assault and breach of the peace was a “confrontation ... punctuated by threats and weaponry” “in the context of an ongoing rivalry between . . . two gangs [that] acted violently toward each other.” Ibid. The court reasoned that the escalating violence, resulting in someone being shot, was a foreseeable consequence of the defendant’s intended act of participating in the gang confrontation. Ibid.
Although the court in Montes applied a more expansive concept of “motive” or “intent” than did the courts in Nguyen and Simpson, we cannot say that those concepts as used in any of these cases extend significantly beyond the concept as set forth in the cases of other States. See Appendix C, infra.
Moreover, in our view, to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute’s language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.
Because Duenas-Alvarez makes no such showing here, we cannot find that California’s statute, through the California courts’ application of a “natural and probable consequences” *194 doctrine, creates a subspecies of the Vehicle Code section crime that falls outside the generic definition of “theft.”
B
Duenas-Alvarez makes two additional claims. First, he argues that § 10851 holds liable accessories after the fact; and to prove that an individual was an accessory after the fact does not require the Government to show that the individual committed a theft. Second, Duenas-Alvarez argues that § 10851 applies, not only to auto theft, but also to joyriding, which he argues involves so limited a deprivation of the use of a car that it falls outside the generic “theft” definition. See Van Vechten v. American Eagle Fire Ins. Co., 239 N. Y. 303, 146 N. E. 432 (1925) (Cardozo, J.) (citing cases for proposition that a very temporary use is not theft).
We shall not consider these claims. The question that we agreed to decide is whether “ Theft offense’ ” in the federal statute “includes aiding and abetting the commission of the offense.” See Brief for Petitioner I. Context makes clear that “aiding and abetting” in this question referred to the use of that term in Penuliar, i. e., to the second and third common-law categories (principal in the second degree, accessory before the fact), see supra, at 189, see also Brief for Petitioner 13, and not to “accessory after the fact.” Thus neither this claim nor the “joyriding” claim falls within the terms of the question presented. Regardless, the lower court did not consider the claims, and we decline to reach them in the first instance. See National Collegiate Athletic Assn. v. Smith, 525 U. S. 459, 469-470 (1999); Roberts v. Galen of Va., Inc., 525 U. S. 249, 253-254 (1999) (per curiam); United States v. Bestfoods, 524 U. S. 51, 72-73 (1998).
For these reasons we vacate the Ninth Circuit’s judgment and remand the case for further proceedings consistent with this opinion.

It is so ordered.

*195 APPENDIXES TO OPINION OF THE COURT
A
Ala. Code §§13A-2-20, 13A-2-23 (2006); Alaska Stat. §§ 11.16.100,11.16.110 (2004); Ariz. Rev. Stat. Ann. §§ 13-301, 13-302, 13-303(A) (West 2001); Ark. Code Ann. §§5-2-402, 5-2-403(a) (2006); Colo. Rev. Stat. Ann. §§18-1-601, 18-1-603 (2006); Conn. Gen. Stat. §53a-8(a) (2005); Del. Code Ann., Tit. 11, §271 (1995); D. C. Code §22-1805 (2001); Fla. Stat. §777.011 (2006); Ga. Code Ann. §16-2-20 (2003); Haw. Rev. Stat. §§702-221, 702-222 (1993); Idaho Code § 19-1430 (Lexis 2004); 111. Comp. Stat., ch. 720, §§5/5-1, 5/5-2 (West 2004); Ind. Code §35-41-2-4 (West 2004); Iowa Code §703.1 (2005); Kan. Stat. Ann. §21-3205(1) (1995); Ky. Rev. Stat. Ann. §502.020(1) (West 2006); La. Stat. Ann. §14:24 (West 1997); Me. Rev. Stat. Ann., Tit. 17-A, §57(1) (2006); Md. Grim. Proc. Code Ann. §4-204(b) (Lexis Supp. 2006); Mass. Gen. Laws, ch. 274, §2 (West 2004); Mich. Comp. Laws Ann. §767.39 (West 2000); Minn. Stat. § 609.05, subd. 1 (2004); Miss. Code Ann. §97-1-3 (2006); Mo. Rev. Stat. §§562.036, 562.041(1) (2000); Mont. Code Ann. §§45-2-301, 45-2-302 (2005); Neb. Rev. Stat. §28-206 (1995); Nev. Rev. Stat. §195.020 (2003); N. H. Rev. Stat. Ann. §626:8 (Supp. 2006); N. J. Stat. Ann. § 2C:2-6 (West 2005); N. M. Stat. Ann. §30-1-13 (2004); N. Y. Penal Law Ann. §20.00 (West 2004); N. C. Gen. Stat. Ann. §14-5.2 (Lexis 2005); N. D. Cent. Code Ann. §12.1-03-01(1) (Lexis 1997); Ohio Rev. Code Ann. §§ 2923.03(A), (F) (Lexis 2006); Okla. Stat., Tit. 21, § 172 (West 2001); Ore. Rev. Stat. §§ 161.150,161.155 (2003); 18 Pa. Cons. Stat. §306 (2002); R. I. Gen. Laws § 11-1-3 (2002); S. C. Code Ann. §16-1-40 (2003); S. D. Codified Laws §§22-3-3, 22-3-3.1 (1998); Tenn. Code Ann. §§39-ll-401(a), 39-11-402 (2006); Tex. Penal Code Ann. §§7.01, 7.02(a) (West 2003); Utah Code Ann. §76-2-202 (Lexis 2003); Vt. Stat. Ann., Tit. 13, §§3-4 (1998); Va. Code Ann. §18.2-18 (Lexis 2004); Wash. Rev. Code §9A.08.020 *196 (2006); W. Va. Code Ann. §61-11-6 (Lexis 2005); Wis. Stat. §939.05 (2003-2004); Wyo. Stat. Ann. §6-1-201 (2005).
B
Alaska Stat. § 11.16.110; Riley v. State, 60 P. 3d 204, 214, 219-221 (Alaska App. 2002); Tarnef v. State, 512 P. 2d 923, 928 (Alaska 1973); State v. Phillips, 202 Ariz. 427, 435-437, 46 P. 3d 1048, 1056-1058 (2002); State v. Wall, 212 Ariz. 1, 4-5, 126 P. 3d 148, 151-152 (2006); Colo. Rev. Stat. Ann. § 18-1-603; Bogdanov v. People, 941 P. 2d 247, 250-252, and n. 8, as amended by 955 P. 2d 997 (Colo. 1997), disapproved of on other grounds by Griego v. People, 19 P. 3d 1, 7-8 (Colo. 2001); Wilson-Bey v. United States, 903 A. 2d 818, 821-822 (D. C. 2006); Kitt v. United States, 904 A. 2d 348, 354-356 (D. C. 2006); Commonwealth v. Richards, 363 Mass. 299, 305-308, 293 N. E. 2d 854, 859-860 (1973); Commonwealth v. Daughtry, 417 Mass. 136, 137-140, 627 N. E. 2d 928, 930-931 (1994) ; Mont. Code Ann. §45-2-302; State ex rel. Keyes v. Montana 13th Jud. Dist. Ct., 288 Mont; 27, 32-35, 955 P. 2d 639, 642-643 (1998); Sharma v. State, 118 Nev. 648, 653-657, 56 P. 3d 868, 871-873 (2002) (per curiam); cf. Bolden v. State, 121 Nev. 908, 921-922, 124 P. 3d 191, 200 (2005); State v. Carrasco, 1997-NMSC-047, ¶¶ 5-13, 946 P. 2d 1075, 1079-1080; State v. Bacon, 163 Vt. 279, 286-292, 658 A. 2d 54, 60-63 (1995) ; State v. Pitts, 174 Vt. 21, 23-27, 800 A. 2d 481, 483-485 (2002).
C
See, e.g., 2 LaFave § 13.3(b), at 361-362, nn. 27-29 (2d ed. 2003 and Supp. 2007) (identifying cases applying the doctrine in California, Delaware, Illinois, Indiana, Iowa, Kansas, Maine, Minnesota, Tennessee, and Wisconsin, as well as in other States where the continued viability of the doctrine is unclear); State v. Medeiros, 599 A. 2d 723, 726 (R. I. 1991) (aider and abettor intends natural and probable consequences of his acts). See also Beasley v. State, 360 So. 2d 1275, 1278 (Fla. App. 1978); Ga. Code Ann. § 16-2-20; Jack *197 son v. State, 278 Ga. 235, 235-237, 599 S. E. 2d 129, 131-132 (2004) ; Jordan v. State, 272 Ga. 395, 395-397, 530 S. E. 2d 192, 193-194 (2000); Crawford v. State, 210 Ga. App. 36, 36-37,435 S. E. 2d 64, 65 (1993); State v. Ehrmantrout, 100 Idaho 202, 595 P. 2d 1097 (1979) (per curiam); State v. Meyers, 95-750, pp. 5-7 (La. App. 11/26/96), 683 So. 2d 1378, 1382; State v. Holmes, 388 So. 2d 722, 725-727 (La. 1980); People v. Robinson, 475 Mich. 1, 8-9, 715 N. W. 2d 44, 49 (2006); Welch v. State, 566 So. 2d 680, 684-685 (Miss. 1990); State v. Roberts, 709 S. W. 2d 857, 863, and n. 6 (Mo. 1986); State v. Ferguson, 20 S. W. 3d 485, 497 (Mo. 2000); State v. Logan, 645 S. W. 2d 60, 64-65 (Mo. App. 1982); State v. Leonor, 263 Neb. 86, 95-97, 638 N. W. 2d 798, 807 (2002); N. J. Stat. Ann. §2C:2-6; State v. Torres, 183 N. J. 554, 566-567, 874 A. 2d 1084, 1092 (2005) ; State v. Weeks, 107 N. J. 396, 401-406, 526 A. 2d 1077, 1080-1082 (1987); Ohio Rev. Code Ann. §2923.03; State v. Johnson, 93 Ohio St. 3d 240, 242-246, 754 N. E. 2d 796, 799-801 (2001); State v. Herring, 94 Ohio St. 3d 246, 248-251, 762 N. E. 2d 940, 947-948 (2002); Ore. Rev. Stat. §161.155; State v. Pine, 336 Ore. 194, 203-205, 206-208, and n. 6, 82 P. 3d 130, 135, 137, and n. 6 (2003); State v. Anlauf, 164 Ore. App. 672, 674-677, and n. 1, 995 P. 2d 547, 548-549, and n. l (2000); Hudgins v. Moore, 337 S. C. 333, 339, n. 5, 524 S. E. 2d 105, 108, n. 5 (1999); S. D. Codified Laws §22-3-3; State v. Tofani, 2006 SD 63, ¶¶ 31-48, 719 N. W. 2d 391, 400-405; State v. Richmond, 90 S. W. 3d 648, 654-656 (Tenn. 2002); Tex. Penal Code Ann. § 7.02; Ex parte Thompson, 179 S. W. 3d 549, 552 (Tex. Crim. App. 2005); Gordon v. State, 640 S. W. 2d 743, 758 (Tex. App. 1982); Utah Code Ann. §76-2-202; State v. Alvarez, 872 P. 2d 450, 461 (Utah 1994); State v. Crick, 675 P. 2d 527, 534 (Utah 1983); State v. Rodoussakis, 204 W. Va. 58, 77, 511 S. E. 2d 469, 488 (1998); Jahnke v. State, 692 P. 2d 911, 921-922 (Wyo. 1984); Fales v. State, 908 P. 2d 404, 408 (Wyo. 1995); United States v. Edwards, 303 F. 3d 606, 637 (CA5 2002), cert. denied, 537 U. S. 1192 (2003); United States v. Walker, 99 F. 3d 439, 443 (CADC 1996); United States v. *198 Miller, 22 F. 3d 1075,1078-1079 (CA11 1994); United States v. Moore, 936 F. 2d 1508, 1527 (CA7), cert. denied, 502 U. S. 991 (1991); United States v. Graewe, 774 F. 2d 106, 108, n. 1 (CA6 1985), cert. denied, 474 U. S. 1068 and 1069 (1986); United States v. Barnett, 667 F. 2d 835, 841 (CA9 1982); United States v. DeLaMotte, 434 F. 2d 289, 293 (CA2 1970), cert. denied, 401 U. S. 921 (1971).