# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-60220

United States Court of Appeals
Fifth Circuit

**FILED**
April 3, 2014

Lyle W. Cayce
Clerk

YASMIN HUGHES,

Petitioner - Appellee

v.

CHRISTOPHER B. EPPS, COMMISSIONER, MISSISSIPPI DEPARTMENT OF CORRECTIONS; ATTORNEY GENERAL JIM HOOD,

Respondents - Appellants

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:09-CV-284

Before HIGGINBOTHAM, DAVIS, and HAYNES, Circuit Judges.

PER CURIAM:*

Yasmin Hughes was convicted in Mississippi state court of one count of armed robbery and two counts of aggravated assault, and his convictions were affirmed on direct appeal. He then filed a petition for a writ of habeas corpus in federal court, alleging that the evidence presented at his trial was legally insufficient to support his convictions. The district court granted habeas relief, and the Commissioner of the Mississippi Department of Corrections timely appealed. We REVERSE and RENDER.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-60220

## I. Factual and Procedural Background

At approximately 10:00 p.m. on May 2, 2006, Jack Warner answered a knock at his door, finding two young males, later identified as Adrion Webster and Yasmin Hughes. Webster stated that they had run out of gas and asked to use Warner's phone. Warner handed a cordless phone to Webster, and Webster made a phone call during which he purported to tell a person on the other end of the line that he had run out of gas. As Webster returned the phone to Warner, Hughes pulled his hood over his head. Sensing that something bad was about to transpire, Warner offered the men a few gallons of gas that he kept under his carport. Webster declined the offer, stating that someone would be bringing them gas. Hughes and Webster then turned to walk away. When Warner turned to go back into his house, Webster shot Warner three times. Hearing the gunshots, Warner's wife ran to the door and was also shot. Warner ran toward Webster in defense of his wife, and he was shot a fourth time. Webster and Hughes then ran out of the carport and toward the back of the Warners' home, away from the road.

In actuality, Webster and Hughes had not run out of gas. Webster also had not spoken to anyone on the phone, but had instead called the house at which Hughes was staying and spoken to an answering machine as if someone had answered. Earlier in the day, Webster had picked Hughes up and they had driven around, discussing ways to make money, including hustling and robbing. Shortly before the incident, the two had parked for a few minutes in the driveway of one of the Warners' neighbors. Webster and Hughes had then continued on and parked their vehicle on a small dirt road approximately 150 to 200 yards from the Warners' home before walking to the Warners' home.

2

No. 13-60220

After the shooting, they returned to their vehicle, and Webster said to Hughes, "Why did you run? That was our lick."[1]

Hughes was indicted on one count of armed robbery and two counts of aggravated assault.[2] The case was submitted to the jury pursuant to an aiding and abetting instruction, and Hughes was convicted on all three counts. Hughes appealed to the Mississippi Supreme Court, contesting, among other things, the sufficiency of the evidence to support his convictions. Hughes argued that there was "no evidence to show that he had prior knowledge of Webster's criminal intent, that he participated in the crimes in any way, or that he otherwise aided and abetted the commission of the crimes." *Hughes v. State*, 983 So. 2d 270, 276 (Miss. 2008). The Mississippi Supreme Court affirmed, holding that there was sufficient evidence to allow a rational jury to find beyond a reasonable doubt that Hughes aided and abetted the crimes of armed robbery and aggravated assault. *Id.* at 276–80. The United States Supreme Court denied Hughes's petition for a writ of certiorari. *Hughes v. Mississippi*, 555 U.S. 1052 (2008).

Hughes filed a timely petition for a writ of habeas corpus in federal district court, again challenging the sufficiency of the evidence to support his convictions. The district court granted the petition, holding that no reasonable trier of fact could have found that the state proved the elements of the charged crimes beyond a reasonable doubt. The district court's opinion was primarily based on its conclusion that there was no evidence to show that Hughes knew of Webster's gun, which the district court concluded was an element necessary to sustain Hughes's convictions. The district court also found that there was

---

[1] There was testimony at trial that a "lick" typically means to rob somebody or to steal something.

[2] Webster was also indicted on all three counts. He pleaded guilty to the aggravated assault counts, and the prosecution dropped the armed robbery count.

No. 13-60220

insufficient evidence that Hughes took any action in support of the crimes of *armed* robbery and *aggravated* assault.

## II. Discussion

When reviewing a district court's grant of habeas relief, we review issues of law *de novo* and factual findings for clear error. *Woodfox v. Cain*, 609 F.3d 774, 788–89 (5th Cir. 2010).

Hughes's petition challenged the sufficiency of the evidence to support his convictions—an issue that he unsuccessfully adjudicated in state court. Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court has no authority to grant habeas relief after an adjudication on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citation and internal quotation marks omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786. Therefore, to receive habeas relief, a state prisoner "must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87. Moreover, a state court's factual findings are presumed correct unless the applicant rebuts that presumption by clear and convincing evidence. *See* § 2254(e)(1).

"The evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any*

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Under Mississippi law, "one who aids and abets another in the commission of an offense is guilty as a principal." *King v. State*, 857 So. 2d 702, 739 (Miss. 2003).  To convict Hughes of aiding and abetting the crimes of aggravated assault and armed robbery, the prosecution was required to prove that the crimes were committed and that Hughes "was present, consenting, aiding, and abetting" in the commission of the crimes.  *Lynch v. State*, 877 So. 2d 1254, 1279 (Miss. 2004) (citation and internal quotation marks omitted).  Hughes does not contend that the evidence was insufficient to prove that Webster committed the crimes of armed robbery and aggravated assault.  He argues only that evidence was insufficient to prove that he had the intent to aid and abet the commission of the crimes and that he took actions in aid of these crimes.

As a threshold matter, contrary to Hughes's assertion and the district court's conclusion, it was not necessary under Mississippi law that the prosecution prove Hughes knew Webster had a gun.[3]  This is because Mississippi has adopted the "natural and probable consequences" doctrine: "Where parties combine to commit crime, the law imputes the guilt of each to all thus engaged, and pronounces all guilty of any crime committed by any, in the execution of the common purpose, as one of its natural and probable consequences . . . ." *Eakens v. State*, 289 So. 2d 687, 689 (Miss. 1974) (quoting

---

[3]     State law determines the substantive elements of a crime, while federal law determines federal constitutional sufficiency of the evidence. *Coleman v. Johnson,* 132 S. Ct. 2060, 2064 (2012) (per curiam).  To the extent that there is disagreement about the parameters of applicable Mississippi aiding and abetting law, we note that "federal habeas corpus relief does not lie for errors of state law." *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2011) (per curiam) (internal quotation marks and citation omitted).  "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* (internal quotation marks and citation omitted).

No. 13-60220

*Franklin v. State*, 196 So. 787, 792 (Miss. 1940)); *see generally Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 190–91, 196–98 (2007) (explaining that "many States and the Federal Government apply some form or variation" of the "'natural and probable consequences' doctrine," and cataloging those states that have adopted some form of the doctrine). Indeed, the Mississippi Supreme Court has applied this doctrine to reject the argument made by Hughes, holding that a conviction for armed robbery (or even a conviction for murder) may be sustained although the defendant was unaware of the weapon and intended to aid only in the commission of a simple robbery. *See Eakens*, 289 So. 2d at 688–89; *see also Anderson v. State*, 397 So. 2d 81, 84–85 (Miss. 1981) ("Had Taylor murdered someone during the commission of the robbery, Anderson could have been indicted and punished for the murder, notwithstanding the fact that he was only aiding and abetting the robbery. It follows that Anderson was properly indicted and punished for robbery by use of a firearm."). Therefore, since the use of a firearm is a natural and probable consequence of a simple robbery, Hughes could be convicted of armed robbery and aggravated assault committed by Webster in furtherance of the intended robbery, even if the prosecution proved only that he intended to aid and abet a simple robbery.[4]

---

[4] This case is not controlled by *Rosemond v. United States*, 134 S. Ct. 1240 (2014), where the United States Supreme Court recently held that a defendant must have advanced knowledge that a codefendant would use or carry a firearm to be convicted of aiding and abetting the federal crime of using or carrying a firearm in connection with a drug trafficking crime. That case arose under federal law, not Mississippi law. Further, its reasoning is distinguishable because the Court explicitly noted that it was not addressing whether the charged crime was a natural and probable consequence of the intended crime. *Id.* at 1248 n.7 ("[N]o one contends that a § 924(c) violation is a natural and probable consequence of simple drug trafficking. We therefore express no view on the issue."). Here, the Mississippi Supreme Court has clearly held that the use of a firearm is a natural and probable consequence of simple robbery. *See Eakens*, 289 So. 2d at 688–89.

No. 13-60220

Considering the evidence in this case, the Mississippi Supreme Court held that Warner's testimony that Hughes and Webster together turned around and walked away before the shooting began supported a finding that "Hughes knew what was about to transpire." *Hughes*, 983 So. 2d at 277. The court also held that Webster's statement after the crime regarding a "lick" would allow a juror to "reasonably infer that a 'lick' or robbery had been their mutual intent beforehand." *Id.* Moreover, the Mississippi Supreme Court thoroughly explained how a finding of a mutual intent to commit robbery was supported by the totality of the circumstances, including that the two discussed the subject of robbery beforehand, parked for a while in a neighbor's driveway, and both walked together 150 to 200 yards to the Warners' home to tell a false story about running out of gas. *Id.* at 279.[5]

Likewise, the Mississippi Supreme Court considered Hughes's argument that he was merely present and did not aid in the commission of the crimes. It explained that, under Mississippi law, "[m]ere presence, even with the intent of assisting in the crime, is insufficient *unless the intention to assist was in some way communicated to [the principal].*" *Id.* at 276–77 (emphasis added) (citation and internal quotation marks omitted). The court distinguished the cases cited by Hughes and held that the evidence in his case was sufficient to show that he aided and abetted the commission of the crimes by being present and communicating his intent to aid Webster by (1) accompanying him the 150 to 200 yards to the Warners' house after the two discussed robbery, and (2) "acting, along with Webster, as if he were leaving just before Webster began shooting." *Id.* at 277.

---

[5] Indeed, the district court noted that "the talk earlier in the day of potentially robbing someone may establish Hughes'[s] knowledge that Webster might do such a thing."

7

No. 13-60220

As the Mississippi Supreme Court recognized, there was evidence presented at Hughes's trial as to both his intent and his actions in aid of Webster's commission of armed robbery and aggravated assault. The court's factual findings were not unreasonable in light of this evidence, especially given the rebuttable presumption that applies. *See* 28 U.S.C. § 2254(d)(2), (e)(1). Nor can we say that the court unreasonably applied the United States Supreme Court's sufficiency of the evidence standard as established in *Jackson*, 443 U.S. at 319. *See* § 2254(d)(1).

A district court cannot engage in its own analysis without explaining how the Mississippi Supreme Court's thorough analysis "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786–87. Such an approach would "illustrate[] a lack of deference to the state court's determination and an improper intervention in state criminal processes, contrary to the purpose and mandate of AEDPA." *Id.* at 787. Because Hughes failed to show that the Mississippi Supreme Court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," the district court was without authority to grant habeas relief. *Id.* at 786–87.

The judgment granting habeas relief is REVERSED, and judgment is RENDERED, denying habeas relief.

8