# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-41349

United States Court of Appeals
Fifth Circuit

**FILED**
November 3, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

RAFAEL ALBORNOZ-ALBORNOZ,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, SMITH, and SOUTHWICK, Circuit Judges.

PER CURIAM:

Rafael Albornoz-Albornoz appeals his sentence by challenging a sixteen-level enhancement for a crime of violence ("COV"). He maintains that his past conviction of attempted second-degree burglary does not qualify as a COV under U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.) § 2L1.2(b)(1)(A)(ii) because New York's burglary statute is broader than the generic crime of burglary of a dwelling under the sentencing guidelines. Specifically, he reasons that the term "dwelling" under New York law is more expansive than the

No. 13-41349

common definition of that term.  We conclude otherwise and affirm.


I.

In 2011, Albornoz-Albornoz was convicted in New York of attempted second-degree burglary.  A Colombian citizen, he was deported, but border agents later apprehended him in the United States.  He pleaded guilty of illegal reentry under 8 U.S.C. § 1326(a).

The presentence investigation report ("PSR") made the following sentencing calculations: a base offense level of 8 and a criminal-history category of III, a two-level reduction for acceptance of responsibility, and a sixteen-level enhancement for a felony conviction of a COV.  *See* U.S.S.G. §§ 2L.1.2, 3E1.1(a).  After the government moved for an additional one-level reduction, the final sentencing range was 46–57 months.

Albornoz-Albornoz submitted timely objections to the enhancement, contending that the New York burglary statute was broader than the generic crime of burglary of a dwelling in the guidelines' list of enumerated offenses.  The court disagreed and sentenced him to forty-six months.


II.

We review the district court's interpretation and application of the guidelines *de novo*.[1]  Under U.S.S.G. § 2L.1.2(b)(1)(A), a defendant convicted of illegal reentry is subject to a sixteen-level sentencing enhancement if he was previously deported after any federal, state, or local conviction for, among other things, a COV.  The commentary then lists what offenses count as COVs, including "burglary of a dwelling."  § 2L.1.2 cmt (1)(B)(iii).

For an enhancement based on a state conviction, the state crime must

---

[1] *United States v. Guerrero-Navarro*, 737 F.3d 976, 977 (5th Cir. 2013); *United States v. Murillo-Lopez*, 444 F.3d 337, 339 (5th Cir. 2006).

No. 13-41349

not stretch further than the generic definition of the enumerated crime. *Taylor v. United States*, 495 U.S. 575, 599–601 (1990). To resolve whether a state statute is more expansive than an enumerated crime, "courts must examine the statutory definition of the offense to determine whether an associated conviction necessarily satisfies the elements of the generic crime, as that crime is understood in its ordinary, contemporary meaning." *Guerrero-Navarro*, 737 F.3d at 978. This is a categorical, common-sense analysis, and courts do not look to the actual facts of the conviction. *Taylor*, 495 U.S. at 599–600; *Murillo-Lopez*, 444 F.3d at 339–40.

For instance, a state conviction of arson qualifies as a COV under § 2L.1.2(b)(1)(A)(ii) only "if either its statutory definition substantially corresponds to 'generic' [arson], or the charging paper and jury instructions actually required the jury to find all the elements of generic [arson] in order to convict." *Taylor* 495 U.S. at 602; *see also Guerrero-Navarro*, 737 F.3d at 978. If the court finds "a realistic probability, *not a theoretical possibility*, that the State would apply its statute to conduct that falls outside the generic definition of the crime," then it cannot use the state conviction to enhance. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (emphasis added). At a minimum, the defendant must point to cases in which a state court has applied the statute in a broader manner. *Id.*

III.

A.

Following the Supreme Court's roadmap, we begin with New York's burglary statute: "A person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when . . . [t]he building is a dwelling. N.Y. PENAL LAW § 140.25 (McKinney 2014). Elsewhere, the law defines a "dwelling" as "a

3

building which is usually occupied by a person lodging therein at night" and states that "[w]here a building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of the main building." *Id.* § 140.00(2), (3). Albornoz-Albornoz does not dispute that these are the relevant statutes but maintains that New York courts have interpreted "dwelling" to be broader than the generic definition.

To see how New York courts have interpreted and applied the burglary statute, we need not look much further than *People v. McCray*, 23 N.Y.3d 621, 624 (2014):

> Generally, if a building contains a dwelling, a burglary committed in any part of that building is the burglary of a dwelling; but an exception exists where the building is large and the crime is committed in a place so remote and inaccessible from the living quarters that the special dangers inherent in the burglary of a dwelling do not exist.

Thus, New York's highest court upheld McCray's second-degree burglary conviction of entering part of a building with direct stairway access to a hotel floor with guest rooms. *Id.* at 629–30. That definition also comports with the intermediate-court decisions that Albornoz-Albornoz relies on.[2] Therefore, we accept the Court of Appeals's holding, along with the statutory language, as the relevant authorities for New York's definition of "dwelling."

## B.

Following the *Taylor* roadmap, we next determine the general meaning of "dwelling" within the Guidelines by examining the "ordinary, contemporary" definition of the enumerated crime, *Guerrero-Navarro*, 737 F.3d at 979, including "look[ing] to sources such as the Model Penal Code, Professor

---

[2] *See, e.g., People v. Rohena*, 589 N.Y.S.2d 156, 157–58 (App. Div. 1992) (upholding a burglary conviction of entering a doctor's office that shared a building with residential tenants).

No. 13-41349

LaFave's treatise, and legal dictionaries," *United States v. Mungia-Portillo*, 484 F.3d 813, 816 (5th Cir. 2007). We start with definitions for "dwelling" or "dwelling house" from legal and general dictionaries:

> a building, a part of a building, a tent, a mobile home, or another enclosed space that is used or intended for use as a human habitation. The term . . . now typically includes only the structures connected either directly with the house or by an enclosed passageway.

BLACK'S LAW DICTIONARY 618 (10th ed. 2014). To the same effect,

> a house or sometimes part of a house that is occupied as a residence in distinction from a store, office, or other building and that may legally include associated or connected buildings within the same curtilage.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 706 (2002) (defining "dwelling house").

The language including connected structures is significant. Albornoz-Albornoz claims that New York's definition is more capacious because it includes any part of a building in which people reside, regardless of the building's other uses. But those sources illustrate that New York's definition aligns with the everyday meaning. Ordinarily understood, a burglar enters a "dwelling" when he breaches a part of a building that is directly connected to a space used for human habitation.

Other sources reinforce this understanding. Professor LaFave's treatise, when discussing the meaning of "dwelling of another," observes that "[a] place of business used only during the day will not so qualify, *but if it is attached to a residence it will.*"[3] Similarly, the Model Penal Code states that "[a] person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with purpose to commit a crime therein."[4]

---

[3] WAYNE L. LAFAVE, CRIMINAL LAW § 21.2(c) (5th ed. 2010) (emphasis added) (citations omitted).

[4] MODEL PENAL CODE § 221.1 (1980). *See also id.* § 221.1 cmt 3(b) (1980) ("The provision . . . as to separately secured or occupied portions of buildings and occupied

No. 13-41349

This court has provided its own generic definition of "dwelling," which includes "a building, structure, tent, or vessel used for human habitation."[5] Yet that definition does not help to resolve this case because it explains a different aspect of what counts as a "dwelling"—whether it includes more than brick-and-mortar buildings. Rather, it is sufficient to rely on these endorsed resources to help answer the question of how single buildings that contain both dwellings and non-dwellings fit into the general definition.

## C.

New York's definition of "dwelling" is not broader than the generic definition. Each source recognizes that the word's ordinary meaning includes structures connected to the dwelling. Moreover, the LaFave treatise and the Model Penal Code specifically address the alleged problem with New York's definition: single buildings that contain both residences and non-residences. Both sources reason that entry into the relevant unit of analysis—the single structure—is sufficient to constitute entry into the dwelling. That understanding makes good sense.

Albornoz-Albornoz offers no other way in which New York's second-degree burglary statute is broader than the generic crime of burglary of a dwelling, and we discern none. Consequently, the district court did not err in applying a sixteen-level enhancement under § 2L1.2(b)(1)(A)(ii).

AFFIRMED.

---

structures takes care of the situation of apartment houses, office buildings, hotels, . . . etc. where occupancy is by unit. It is the individual unit as well as the overall structure that must be safeguarded.").

[5] *United States v. Morales-Mota,* 704 F.3d 410, 412 (5th Cir. 2013); *see also Murillo-Lopez,* 444 F.3d at 345.