# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-1157

———————————————

United States of America

*Plaintiff - Appellee*

v.

Benjamin Robert Yackel

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Minnesota

——————————

Submitted: November 16, 2020
Filed: March 15, 2021

——————————

Before SHEPHERD, STRAS, and KOBES, Circuit Judges.

——————————

SHEPHERD, Circuit Judge.

Benjamin Robert Yackel pled guilty to one count of conspiracy to distribute methamphetamine and to one count of possession of a firearm in furtherance of a drug trafficking crime. The district court[1] adopted the Presentence Investigation

---

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

Report's (PSR) finding that Yackel was a career offender, and pursuant to the United States Sentencing Guidelines, sentenced him to 240 months imprisonment. On appeal, Yackel challenges his classification as a career offender. Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court.

I.

A grand jury indicted Yackel on various drug distribution and firearms charges. Yackel pled guilty to conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; and to possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Yackel's PSR concluded that his Guidelines base offense level was 37, due in part to his status as a career offender. Yackel received a three-level reduction in offense level for timely acceptance of responsibility, bringing his base offense level to 34.

At sentencing, based on Yackel's 1999 Minnesota conviction for aiding and abetting second-degree assault and his 2004 federal conviction for possession of methamphetamine with the intent to distribute, the district court concluded that Yackel qualified for a career offender enhancement in offense level pursuant to USSG § 4B1.1-.2 and adopted the PSR's factual findings in full. Yackel objected to the PSR's finding that he qualified as a career offender, asserting that the Minnesota aiding and abetting statute is broader than the generic definition. The district court recognized Yackel's objection before overruling it, stating, "[A]s I am bound by the Eighth Circuit precedent and under [United States v. Gammell, 932 F.3d 1175 (8th Cir. 2019)], I find that Mr. Yackel's argument is unpersuasive and I overrule that objection." R. Doc. 220, at 6.

The district court adopted all of the factual statements contained in the PSR before calculating Yackel's total offense level as 34, his criminal history category as VI, and his advisory Guidelines range as 322 to 387 months imprisonment. Yackel requested a downward departure on the basis that his criminal history was

overstated. The district court granted the motion, stating that Yackel's criminal history score was "substantially over-represented," R. Doc. 220, at 15, and departed downward by one level to 33. The district court recalculated Yackel's advisory range as 295 to 353 months imprisonment. Yackel then requested a downward variance. Ultimately, the district court sentenced Yackel to 240 months imprisonment (180 months for conspiracy to distribute methamphetamine and 60 months for possession of a firearm in furtherance of a drug trafficking crime to run consecutively).

## II.

On appeal, Yackel reasserts the argument that he made to the district court: Minnesota's definition of aiding and abetting is overly broad—i.e., broader than the generic definition—such that his 1999 conviction for aiding and abetting second-degree assault cannot qualify as a "crime of violence" under the Guidelines. We disagree.

"We review de novo a district court's finding that prior convictions constitute crimes of violence as defined in § 4B1.2." United States v. Davis, 583 F.3d 1081, 1092 (8th Cir. 2009) (citation omitted). "Under . . . § 4B1.1, a defendant is subject to a sentencing enhancement as a career offender if he has at least two previous felony convictions for either a crime of violence or a controlled substance offense." United States v. Garcia, 946 F.3d 413, 417 (8th Cir. 2019). Section 4B1.1(a) provides, in part:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

-3-

USSG § 4B1.1(a). Further, § 4B1.2(a) defines a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year" which includes crimes that "ha[ve] as an element the use . . . of physical force against the person of another, or is . . . aggravated assault." USSG § 4B1.2(a).

At the outset of our analysis, it is important to note that this Court construes "violent felony" (under the Armed Career Criminal Act (ACCA)) and "crime of violence" (under the Guidelines) as interchangeable. See, e.g., United States v. Boose, 739 F.3d 1185, 1187 n.1 (8th Cir. 2014). "Because the definitions of crime of violence and violent felony are identical, the same analysis applies in determining whether [the defendant's] convictions fall within the conduct defined." United States v. Sprouse, 394 F.3d 578, 580 (8th Cir. 2005), abrogated on other grounds by United States v. Steward, 598 F.3d 960 (8th Cir. 2010) (per curiam); see also United States v. Williams, 537 F.3d 969, 971 (8th Cir. 2008) ("[W]e are bound by cases interpreting whether an offense is a crime of violence under the Guidelines as well as cases interpreting whether an offense is a violent felony under the [ACCA].").

When a defendant (like Yackel) argues that the state statute of conviction is broader than the corresponding generic crime, this Court employs the categorical approach, comparing the state statute's elements with those of the generic crime. See, e.g., Descamps v. United States, 570 U.S. 254, 257 (2013); see also United States v. Boleyn, 929 F.3d 932, 937 n.3 (8th Cir. 2019) ("As aiding and abetting liability is inherent in every conviction under [state law], it is consistent with the categorical approach to look to [the state's] aiding and abetting statute in determining whether the prior offense of conviction is overbroad."); see also, e.g., Gammell, 932 F.3d at 1183 (Kobes, J., concurring) (explaining that the categorical approach, as modeled in Boleyn, 929 F.3d at 937 n.3, is appropriate when determining whether Minnesota's aiding and abetting statute is broader than the generic definition).

> By "generic," we mean the offenses must be viewed in the abstract, to
> see whether the state statute shares the nature of the federal offense that

serves as a point of comparison. Accordingly, a state offense is a categorical match with a generic federal offense only if a conviction of the state offense "'necessarily' involved . . . facts equating to [the] generic [federal offense]."

Moncrieffe v. Holder, 569 U.S. 184, 190 (2013) (alterations in original) (citation omitted); see also Descamps, 570 U.S. at 257 ("The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense."). "But if the [state] statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate, even if the defendant actually committed the offense in its generic form." Descamps, 570 U.S. at 261. Because our analyses of predicate offenses under the ACCA (i.e., whether a prior offense qualifies as a "violent felony") and the Guidelines (i.e., whether a prior offense qualifies as a "crime of violence") are identical, see, e.g., Boose, 739 F.3d 1187 n.1; Sprouse, 394 F.3d 580; Williams, 537 F.3d 971, here, as in Descamps, 570 U.S. at 261, Yackel's prior conviction for aiding and abetting second-degree assault can only qualify as a "crime of violence" if Minnesota's statute is the same as or narrower than the generic offense.

Section 609.05 of Minnesota's criminal code provides: "A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subdiv. 1. Yackel concedes that a Minnesota conviction for second-degree assault qualifies as a "crime of violence," see USSG § 4B1.2, and that the Guidelines define "crime of violence" as including the offense of aiding and abetting, see also USSG § 4B1.2 cmt. n.1. Further, Yackel acknowledges that there is no distinction between a conviction as a principal and a conviction as an aider and abettor. See Gammell, 932 F.3d at 1180 (holding that it matters only whether the underlying substantive offense qualifies as a violent felony—not whether the defendant was convicted as an aider and abettor rather than as a principal). Instead, Yackel only advances the argument that Minnesota's definition of aiding and abetting is overbroad because it criminalizes passive,

-5-

unknowing conduct (e.g., mere presence) while the generic definition requires proof of affirmative conduct intended to promote the underlying crime.

The crux of Yackel's argument is the assertion that Minnesota's *application* of its aiding and abetting statute is broader than that of the generic definition. See, e.g., Appellant Br. 9 ("The Minnesota statute has remained unchanged for decades, but [has been] interpreted by the Minnesota Supreme Court to include a broad swath of conduct."). Therefore, "[t]o succeed, [Yackel] must show something *special* about [Minnesota's] version of the [aiding and abetting] doctrine." Gonzales v. Duenas-Alvarez, 549 U.S. 183, 191 (2007); see also, e.g., Gammell, 932 F.3d at 1182 (Kobes, J., concurring) ("In [Gonzales, 549 U.S. at 191], when confronted with a similar argument about the scope of California's definition of aiding and abetting, the Supreme Court said that a conviction potentially based on an aiding and abetting theory would not qualify as a predicate offense under the Immigration and Nationality Act if a defendant could show that there was 'something *special* about [his state's] version of [aiding and abetting]—for example, that [his state] in applying it criminalizes conduct that most other states would not.'" (alterations in original) (citation omitted)).

Yackel cites State v. Ulvinen, 313 N.W.2d 425, 428 (Minn. 1981), and at first glance, this case appears to support Yackel's position. In Ulvinen, the Minnesota Supreme Court noted that "*presence*, companionship, and conduct before and after the offense are circumstances from which a person's participation in the criminal intent may be inferred." Id. (emphasis added). However, upon closer examination, Ulvinen confirms that a "high level of activity on the part of an aider and abettor in the form of conduct that encourages another to act" is required by § 609.05. Id. The Ulvinen court held that there was insufficient evidence to convict the defendant of first-degree murder (based on an aiding and abetting theory of liability under § 609.05) because the defendant was "insulated by statute from guilt as an accomplice after-the-fact for such conduct because of her relation as a parent of the offender," see Minn. Stat. § 609.495, subdiv. 2 (1980), and because her assistance arose after the murder and "[did] not succeed in transforming her behavior prior to

-6-

the crime to active instigation and encouragement," <u>Ulvinen</u>, 313 N.W.2d at 428. Therefore, although some language in <u>Ulvinen</u>, when read alone, appears to support Yackel's assertion that liability can arise from mere presence, the case, when read in its entirety, confirms that aiding and abetting liability can only arise where the defendant *intended* to "instigat[e] and encourage[]" the principal. <u>See</u> <u>id.</u> Therefore, <u>Ulvinen</u> does not support Yackel's contention that there is something "special" about Minnesota's definition of aiding and abetting.

Similarly, the other Minnesota cases to which Yackel cites fail to show that there is something "special" about the Minnesota courts' application of § 609.05. <u>See, e.g.</u>, <u>State v. Parker</u>, 164 N.W.2d 633, 641 (Minn. 1969) ("Certainly mere presence on the part of [the defendant] would be enough *if it is intended to and does aid the primary actors*." (emphasis added)); <u>State v. Ostrem</u>, 535 N.W.2d 916, 925 (Minn. 1995) (finding that the evidence supported aiding and abetting liability because it showed that the defendant was "present" at the scene and did nothing to thwart completion of the crime, explaining that "[m]ere presence at the scene of a crime does not alone prove that a person aided or abetted, because inaction, knowledge, or passive acquiescence does not rise to the level of criminal culpability"); <u>State v. Merrill</u>, 428 N.W.2d 361, 368 (Minn. 1988) (finding that a rational jury could conclude the defendant aided and abetted a murder where the defendant was "present and actively participating in the aggravated robbery" and where the defendant had exhibited "anger and earlier violence towards [the victim]"); <u>see also, e.g.</u>, <u>Gammell</u>, 932 F.3d at 1183 (Kobes, J., concurring) ("I read [<u>Ostrem and Parker</u>] as in line with the federal definition of aiding and abetting.").[2]

---

[2]The <u>Merrill</u> court suggested in dicta that under subdivision 2 of § 609.05, mere presence *is* sufficient for aiding and abetting liability where a murder was committed in furtherance of an aggravated robbery and where that murder was a reasonably foreseeable consequence of that robbery. 428 N.W.2d at 369. However, the <u>Merrill</u> court did not state—and Yackel fails to mention—that liability under subdivision 2 of § 609.05 is not possible without liability under subdivision 1—a provision which expressly requires intent. <u>Compare</u> Minn. Stat. § 609.05, subdiv. 2 ("A person liable under subdivision 1 is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by [him] . . . .") <u>with</u> <u>id.</u>,

Although Yackel is correct that Minnesota courts may infer criminal intent from presence, some level of "active instigation and encouragement" is also required. See, e.g., Ulvinen, 313 N.W.2d at 428. Mere presence can, in some circumstances, give rise to aiding and abetting liability, but this is only possible where the defendant's presence "is intended to and does aid the primary actors." Parker, 164 N.W.2d at 641. Ultimately, Minnesota courts' application of § 609.05 is no broader than federal courts' application of the generic definition: federal courts require intentionality but contemplate presence as well. We have "acknowledged that[, for generic aiding and abetting liability,] '[m]ere association between the principal and those accused of aiding and abetting is not sufficient to establish guilt; nor is mere presence at the scene and knowledge that a crime was to be committed sufficient to establish aiding and abetting.'" United States v. Ellefson, 419 F.3d 859, 863 (8th Cir. 2005) (second alteration in original) (citation omitted). However, "criminals rarely welcome innocent persons as witnesses to serious crimes," id. (citation omitted), and "[i]n proscribing aiding and abetting, Congress used language that 'comprehends all assistance rendered by words, acts, encouragement, support, or *presence*,'" Rosemond v. United States, 572 U.S. 65, 73 (2014) (emphasis added) (citation omitted).[3]

---

subdiv. 1 ("A person is criminally liable for a crime committed by another if [he] *intentionally* aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." (emphasis added)).

[3]To the extent relevant here, Minnesota made clear in 2012 that, to hold someone criminally liable on an aiding-and-abetting theory, the state must prove that the defendant "*knowingly* and *intentionally* assisted in the commission of a crime," further foreclosing any argument that Minnesota's definition of aiding and abetting is overbroad. State v. Milton, 821 N.W.2d 789, 805-08 (Minn. 2012) (emphasis added); see also State v. Bahtuoh, 840 N.W.2d 804, 812 (Minn. 2013).

Ultimately, we agree with the district court that Yackel's 1999 conviction for aiding and abetting second-degree assault qualifies as a "crime of violence" under the Guidelines.

III.

For the above-stated reasons, we affirm the district court.

_____